**Waahid MUSLIM, a/k/a David Richardson, Plaintiff,**

v.

**Thomas FRAME, et al., Defendants.**

Civ. A. No. 93–554.

United States District Court,
E.D. Pennsylvania.

June 30, 1995.

227

Mark B. Schoeller, Duane, Morris & Heckscher, Philadelphia, PA, for plaintiff Waahid Muslim aka David Dewees Richardson.

Waahid Muslim, Coatesville, PA, pro se.

Deborah L. Doyle, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Joseph Goldberg, Philadelphia, PA, C. Robert Elicker, Jr., Chester County Solicitor, West Chester, PA, for defendants Thomas G. Frame, Warden, Edward McFadden, Director of Treatment, Dale Guyer, Correctional Officer.

## MEMORANDUM OPINION

LOUIS H. POLLAK, District Judge.

Waahid Muslim brought this section 1983 suit challenging the headgear restrictions imposed by the Chester County Prison. Under the regulations in force while Mr. Muslim was in custody as a pre-trial detainee from July 7, 1992 to October 18, 1993, inmates were not permitted to wear headgear in the common areas of the prison, although the wearing of *religious* headgear was permitted in the cell blocks and during religious services.[1] Mr. Muslim asserts that the regulations violate his rights under the First and Fourteenth Amendments because the regulations restrict him from wearing a kufiyyah, or kufi, the Muslim prayer cap, which the

---

1. The headgear restrictions at issue here appear in the "Inmate Handbook" of the Chester County Prison, which provides: "When leaving your [cell] block, you must be properly dressed— socks, shoes, must be tied, shirts tucked in, proper pants, and NO HEADWEAR." Defendants' Exhibit E, at 13.

plaintiff considers an expression of his Muslim faith. Defendants, Warden Thomas G. Frame and prison officials D. Edward McFadden and Dale Guyer, assert that the headgear regulations are justified to protect prison security.

Mr. Muslim commenced this action *pro se;* but, when the complexity of the issues tendered by the plaintiff became apparent, counsel was appointed to represent him. The case was then transferred by this court to Magistrate Judge Thomas J. Rueter. After discovery was complete, both plaintiff and defendants moved for summary judgment.

Magistrate Judge Thomas J. Rueter has filed a Report and Recommendation, in which he recommends that defendants' motion be granted and plaintiff's motion be denied. Judge Rueter concluded that Mr. Muslim had not produced specific facts showing that the government had substantially burdened his free exercise of religion. Mr. Muslim filed two objections to Judge Rueter's recommendation. First, he claims that Pennsylvania law creates a liberty interest cognizable under the Fourteenth Amendment for prisoners to wear religious ornaments, including a kufi, while in prison, and that the headgear restrictions at issue here deprive him of this interest. Second, Mr. Muslim contends that the prison regulations discriminate between Christians and Muslims, in that Christian inmates are permitted to wear crucifixes in the common areas while Muslims are not allowed to wear kufis. Defendants argue that the court should not consider these objections because Mr. Muslim made them in a *pro se* letter to this court, which he did not file or serve on Defendants.

I do not adopt Judge Rueter's report, but conclude that defendants' summary judgment motion should be granted in part and denied in part, and that plaintiff's summary judgment motion should be denied.

## I. Plaintiff's Claim for Injunctive Relief

In his complaint, plaintiff seeks both damages and injunctive relief. Since the plaintiff filed the complaint, however, he has been released from the Chester County Prison. As a result, plaintiff's claim for injunctive relief must be denied as moot. Defendants'

summary judgment motion is granted with respect to plaintiff's claim for an injunction.

## II. Plaintiff's Free Exercise Claim

In *St. Claire v. Cuyler,* 634 F.2d 109 (3d Cir.1980), the Third Circuit upheld prison headgear restrictions against a free exercise challenge brought by an inmate who wished to wear a kufi throughout the prison area. The *St. Claire* court applied a reasonableness standard, under which "First amendment freedoms may be curtailed whenever [prison] officials, in the exercise of their informed discretion, reasonably conclude that the first amendment exercise possesses 'the likelihood of disruption to prison order or stability, or otherwise interfere[s] with the legitimate penological objectives of the prison environment.'" 634 F.2d at 114 (quoting *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977)).

The standard applied in *St. Claire* no longer remains the law. In 1993, Congress enacted the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, to require courts addressing free exercise claims to apply the "compelling interest" test established by the Supreme Court in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). *See* 42 U.S.C. § 2000bb(b) (stating that the purpose of RFRA is to "restore the compelling interest test" established in *Sherbert* and *Yoder*). Congress enacted RFRA to overrule statutorily the Court's decision in *Employment Division, Dept. of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), which, like the Third Circuit's ruling in *St. Claire,* applied a reasonableness standard to a free exercise challenge. RFRA provides:

(a) In general

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

   (1) is in furtherance of a compelling governmental interest; and

   (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb–1.[2]

■ The broad language of the Act, together with its legislative history, make clear that it applies to free exercise challenges to prison regulations. *See* S.Rep. No. 103–111, 103d Cong., 1st Sess. (1993) U.S.Code Cong. v. Admin.News 1993, p. 1488 ("[T]he committee concludes the first amendment doctrine is sufficiently sensitive to the demands of prison management that a special exemption for prison free exercise claims under the act is unnecessary."). *See also Brown–El v. Harris,* 26 F.3d 68 (8th Cir.1994) (applying RFRA to prison officials); *Campos v. Coughlin,* 854 F.Supp. 194 (S.D.N.Y.1994) (same); *Allah v. Menei,* 844 F.Supp. 1056, 1063 (E.D.Pa.1994) (same); *Lawson v. Dugger,* 844 F.Supp. 1538 (S.D.Fla.1994) (same).

■ Under the test established by RFRA, the plaintiff bears the initial burden of establishing that a rule of general applicability constitutes a "substantial burden" on his or her free exercise of religion. Once this threshold has been satisfied, the defendant officials then bear the burden of establishing that the two elements of the compelling interest test are met. *See* 42 U.S.C. § 2000bb–1(b) (stating that the government can substantially burden free exercise only if it "demonstrates" that it employs the least restrictive means to further a compelling governmental interest); 42 U.S.C. § 2000bb–2(3) (defining "demonstrates" as "meets the burdens of going forward with the evidence and of persuasion"). The government satis-

fies its burden if it establishes that the challenged rule (1) furthers "a compelling governmental interest" and (2) "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(b).

## A. Substantial Burden

Mr. Muslim asserts that the prison's headgear restrictions constitute a substantial burden on his free exercise of religion, in that he cannot wear a kufi throughout the prison compound. Magistrate Judge Rueter, however, concluded that plaintiff had not come forward with sufficient evidence to establish a genuine issue of fact that the burden on plaintiff's free exercise rights was substantial. Judge Rueter based this conclusion on two grounds.

■ First, Judge Rueter concluded that plaintiff had not produced any evidence that wearing a kufi was a *central* practice of plaintiff's religion. Judge Rueter contrasted the restriction at issue here with those at issue in three other cases—*Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), in which state regulations forced the appellant to choose between observing the Sabbath and the receipt of unemployment benefits; *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), in which Amish parents claimed that Wisconsin's compulsory secondary education prevented them from inculcating Amish religious beliefs; and *Campos v. Coughlin,* 854 F.Supp. 194 (S.D.N.Y.1994), in which inmates who were members of the Santeria religion challenged prison policy that prevented them from wearing religious beads believed necessary to avert "life altering adverse consequences." Judge Rueter stated:

   The religious beliefs and practices at issue in *Sherbert, Yoder,* and *Campos* are of

---

2. One court has declared RFRA unconstitutional as a violation of separation of powers principles. *Flores v. City of Boerne,* 877 F.Supp. 355 (W.D.Tex.1995). Another court has questioned whether RFRA exceeds the power of Congress under section 5 of the Fourteenth Amendment. *See Canedy v. Boardman,* 16 F.3d 183, 186 n. 2 (7th Cir.1994). In their summary judgment motion, however, the defendants did not argue that RFRA is unconstitutional, and thus the issue has not been presented to this court. I nonetheless note that Congress's section 5 authority allows it to provide greater protection to constitutional rights than the bare constitutional minimum. *See Katzenbach v. Morgan,* 384 U.S. 641, 651 n. 10, 86 S.Ct. 1717, 1724 n. 10, 16 L.Ed.2d 828 (1966).

great significance to the respective religions. The record in the present case does not establish that the limited restrictions on the wearing of the Kufi is of the same magnitude as the restrictions on religion in *Sherbert, Yoder,* and *Campos.* Plaintiff has offered no evidence that his religion was *substantially burdened,* but rather merely stated that he "desired to wear" his Kufi at all times.

Magistrate's Report and Recommendation at 15.

Second, Judge Rueter stated that plaintiff had not come forward with any evidence showing that the Islamic religion *mandated* that its adherents wear a kufi continuously; rather, plaintiff had only shown that a kufi was a traditional head covering worn during prayer. Because prison rules allow inmates to wear kufis during prayer, Judge Rueter concluded, plaintiff had failed to show that the rules create a substantial burden on the free exercise of religion.

Although some courts have stated that a RFRA plaintiff must demonstrate that the religious practice or belief is considered central to the plaintiff's religion, *see, e.g., Bryant v. Gomez,* 46 F.3d 948, 949 (9th Cir.1994), I conclude that such a showing would unnecessarily place judges in a position of determining questions of religious doctrine. The text of RFRA establishes that a plaintiff must establish that governmental action "substantially burdens the free exercise of religion." 42 U.S.C. § 2000bb–1(b). This language in no way suggests that the right to free exercise is limited to exercises judicially deemed central to the plaintiff's religion. Rather, the unequivocal language of RFRA announces that government may not (in the absence of a "compelling interest" implemented by "the least restrictive means) "substantially burden" a person's "exercise of religion," without regard to the centrality of the particular religious exercise.

Moreover, this reading of the term "exercise of religion" comports with the case law that had developed before the enactment of RFRA. *See* 42 U.S.C. § 2000bb–2(4) (stating that "the term 'exercise of religion' means the exercise of religion under the First Amendment of the Constitution," thus directing courts to examine First Amendment case law for guidance in interpreting RFRA). The Supreme Court has never required that a plaintiff bringing a free exercise claim demonstrate the centrality of a religious practice or belief burdened by the government. For instance, in *Sherbert v. Verner,* the case which established the compelling interest test, the Supreme Court held that the plaintiff had established a burden on her free exercise right by showing that state unemployment rules forced her to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand." 374 U.S. at 404, 83 S.Ct. at 1794.[3] The Court did not suggest that in order to carry her burden the plaintiff was required to demonstrate that the precept of religion at issue was central to her religion. To be sure, the Court in *Hernandez v. Commissioner of Internal Revenue,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148–49, 104 L.Ed.2d 766 (1988), did state that "[t]he free exercise inquiry asks whether government has placed a substantial burden on the observation of a *central* religious belief or practice and, if so, whether a compelling governmental interest justifies the burden" (emphasis added). Despite the suggestion that centrality may be required, the Court then stated, "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Id.* As the Court rightly noted, judges are not competent to determine matters of religious doctrine, including whether one practice is considered central. *See Thomas v. Review Bd.*

---

**3.** In *Sherbert,* the appellant was a member of the Seventh–Day Adventist Church who had been fired because she refused to work on Saturday, the Sabbath Day of her faith. After she could not find other employment due to her refusal to work on Saturday, she sought unemployment benefits under the South Carolina Unemployment Act. South Carolina denied her benefits, concluding that she had refused to accept other employment without good cause. The Supreme Court concluded that the state's denial of benefits constituted a violation of the appellant's free exercise rights.

*of Indiana Employment Security Div.*, 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981) ("Courts are not arbiters of scriptural interpretation."); *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981) ("Judges are ill-equipped to examine the breadth and content of an avowed religion."). *See also* Ira C. Lupu, *Where Rights Begin: The Problem of Burdens on the Free Exercise of Religion*, 102 Harv.L.Rev. 933, 958–59 (1989) ("Moreover, any imaginable process for resolving disputes over centrality creates the spectre of religious experts giving conflicting testimony about the significance of a religious practice, with the state's decisionmaker authoritatively choosing among them.").

Similarly, although some courts have held that a RFRA plaintiff must prove that a religious practice is *mandated* by religion, *see, e.g., Bryant*, 46 F.3d at 949, I conclude that a plaintiff need only show that the practice at issue is religiously *motivated*. A requirement that the plaintiff establish religious compulsion, like a requirement that the plaintiff establish religious centrality, would unnecessarily embroil courts in areas of religious doctrine. Moreover, the legislative history of RFRA makes clear that a showing of religious motivation is all that the Act requires. For instance, Representative Stephen Solarz, RFRA's lead sponsor, stated, "Were Congress to go beyond the phrasing chosen by the drafters of the First Amendment by specifically confining the scope of this legislation to those practices compelled or proscribed by a sincerely held religious belief in all circumstances, we would run the risk of excluding practices which are generally believed to be exercises of religion worthy of protection." Hearings on H.R. 2797 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary, 102d Cong., 2d Sess. 128 (1992). *See also id.* at 136 (statement of Rep. Solarz) ("I would be reluctant to limit [RFRA] to actions compelled by religion, as distinguished from actions which are motivated by a sincere belief."); Douglas Laycock and Oliver S. Thomas, *Interpreting the Religious Freedom Restoration Act*, 73 Tex.L.Rev. 209, 231–236 (1994) (discussing the meaning of "exercise of religion").

■ Thus, a plaintiff's burden under RFRA is satisfied by a showing that the government has placed a substantial burden on a practice motivated by a sincere religious belief. The Third Circuit has stated:

> The relevant case law in the free exercise area suggests that two threshold requirements must be met before particular beliefs, alleged to be religious in nature, are accorded first amendment protection. A court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things.

*Africa*, 662 F.2d at 1030 (citing *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 863–64, 13 L.Ed.2d 733 (1964)). Mr. Muslim has come forward with evidence that his desire to wear a kufi is based on a sincerely held religious belief. Mr. Muslim asserts that the kufi "is a symbol of the Muslim religion which teaches that men should cover their head during prayer.... As a result, the Kufi is deeply rooted in the principles of the Muslim religion and similar headwear is worn throughout the Muslim culture and the Arab world." Plaintiff's Opp. to Defendants' Motion to Dismiss at 3 (citing H.C. Ross, *The Art of Arabian Costume* 39 (1981)). Moreover, plaintiff has asserted that wearing a kufi "indicates a Muslim's respect and deference to Allah." Amended Complaint, ¶ 8. Defendants have not challenged the role of the kufi within the Muslim religion, nor have they challenged the sincerity of plaintiff's desire to wear the kufi. Because the plaintiff has presented a genuine issue of fact as to whether the headgear restrictions substantially burden his free exercise of religion, I must therefore examine whether defendants have shown, as a matter of law, that the prison's headgear restrictions are the least restrictive means of furthering a compelling governmental interest.

**B. Compelling Governmental Interest**

■ The Supreme Court has described compelling interests as "interests of the highest order." *Church of the Lukumi Babalu Aye v. City of Hialeah*, — U.S. —, —, 113 S.Ct. 2217, 2233, 124 L.Ed.2d 472 (1993) (quoting *Wisconsin v. Yoder*, 406 U.S. 205,

215, 92 S.Ct. 1526, 1532–33, 32 L.Ed.2d 15 (1972)). The defendants argue that the headgear restrictions are necessary to ensure prison safety. Moreover, defendants have come forward with evidence to demonstrate that allowing prisoners to wear headgear poses a genuine security problem. Specifically, defendants have pointed to one occasion in which prison guards found marijuana cigarettes hidden in a kufi in an inmate's cell. *See* Defendant's Motion for Summary Judgment, Exhibit F. Because the government's interest in creating safe prisons certainly qualifies as a compelling interest, the defendants have satisfied this element of their burden as a matter of law. *See Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) (stating that "institutional considerations of internal security within the corrections facilities" are "central to all other corrections goals"); *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974) (recognizing the "legitimate governmental interest in the order and security of penal institutions"); *Campos v. Coughlin,* 854 F.Supp. 194, 207 (S.D.N.Y.1994) (finding prison security to be a compelling governmental interest under RFRA); 139 Cong. Rec. S14,362–64 (daily ed. Oct. 26, 1993) (statement of Sen. Hatch, an original cosponsor of RFRA) (stating that "order, safety, security and discipline" are compelling governmental interests in the prison context). *See also* Abbott Cooper, *Dam the RFRA at the Prison Gate: The Religious Freedom Restoration Act's Impact on Correctional Litigation,* 56 Mont.L.Rev. 325 (1995).

## C. Least Restrictive Means

Supreme Court precedent and the legislative history of RFRA establish that prison administrators deserve a measure of deference in their assessment of the means of handling prison security. *See Procunier v. Martinez,* 416 U.S. 396, 414–16, 94 S.Ct. 1800, 1811–12, 40 L.Ed.2d 224 (1974); S.Rep. No. 111, *reprinted in* 1993 U.S.C.C.A.N. at 1900 (directing courts to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good

order, security and discipline, consistent with consideration of costs and limited resources."). Despite this deference, "the state must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health or safety." *Weaver v. Jago,* 675 F.2d 116, 119 (6th Cir.1982) (quoted with approval in S.Rep. No. 111, *supra,* at 1899). *See also* S.Rep. No. 111, *supra,* at 1900 ("[I]nadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements.").

The defendants contend that the headgear restrictions are necessary to further three security goals:

(1) to limit the transportation of contraband, both into the prison from outside and between housing units; (2) to allow for visual identification of prisoners during movement or in large groups; and (3) to impede the use of headgear as symbols for identification among prison gang members.

Magistrate's Report and Recommendation at 2. Mr. Muslim argues that the headgear restrictions are not the least restrictive means of furthering these goals.

Plaintiff asserts that the defendants' concern about the transportation of contraband can adequately be addressed by inspections of prisoners by guards. Defendants counter that if prisoners were permitted to wear religious headgear throughout the prison, "correctional officers would have to search all inmates wearing headgear in the common areas of the prison each time those inmates had contact with other inmates, requiring the Prison to impose excessive additional responsibilities on it correctional officers." Affidavit of D. Edward McFadden, at 9, 10. Defendants, however, have not introduced any evidence to substantiate the additional costs they would face if inmates were allowed to wear religious headgear in the prison's common area.

The pleadings establish genuine issues of material fact as to whether the prison's headgear restrictions constitute the least restrictive means of achieving the government's interest in safe prisons. The drafters of

RFRA intended that courts be especially sensitive to the budgetary constraints of prison officials. *See, e.g.,* 139 Cong.Rec. S14364 (daily ed. Oct. 26, 1993) (statement of Sen. Hatch) ("[T]he intention of the principal sponsors of the bill" is to recognize "the budgetary limitations of prison administrators and extend them reasonable discretion."). Thus, in the prison context, courts must weigh the potential costs of alternatives in determining whether the challenged governmental action constitutes the least restrictive means of furthering the government's interest. RFRA thus does not order the government to make accommodations to religion at any cost. Rather, the court must determine whether the governmental interest could be accomplished by less restrictive means without unduly increasing prison expenses. Nonetheless, defendants cannot gain summary judgment merely by asserting that an alternative would increase costs. Because defendants have not established that allowing prisoners to wear religious headgear in the court's common areas would impose undue costs, they have not established as a matter of law that they are entitled to summary judgment.

Similarly, the defendants' summary judgment motion points to no facts to substantiate the other two security concerns the defendants have identified—the prison's desire to eliminate headwear as a means of expressing gang affiliation and the prison's need to be able to visually identify prisoners during movement. The plaintiff contends that a kufi is not a gang symbol. The plaintiff also contends that kufis do not detract from the ability of guards to identify prisoners. Thus, whether the headgear restrictions represent the least restrictive means of furthering the three security goals identified by defendants remains in dispute, and summary judgment for either party would therefore be inappropriate.

## III. Plaintiff's Additional Claims

Following the issuance of the Magistrate Judge's Report and Recommendation, plaintiff submitted two objections to this court. Defendants contend that plaintiff's objections should not be considered because (1) they were not submitted by appointed counsel but by Mr. Muslim acting *pro se,* and (2) Mr. Muslim did not serve a copy on defendants. Since the court forwarded a copy of plaintiff's objections to defendants, it is not apparent in what way plaintiff's most assuredly unconventional procedure has prejudiced defendants. Accordingly, Mr. Muslim's objections are deemed properly presented and are considered in this Memorandum Opinion.

In his letter, Mr. Muslim stated:

Judge Rueter failed to consider two of the most crucial points of the case, (1) the mandatory and nondiscretionary language of 37 Pa.Code 95.237(a)(5); (2) whether a prison regulation that restricts the religious ornaments of one faith (Kufi) while permitting the religious ornament of the other faith (crucifix) to exceed the bounds of the restricted ornament, is constitutional.

I construe plaintiff's first objection as a claim that Pennsylvania regulations create a liberty interest of sufficient scope to be cognizable under the Fourteenth Amendment, and that defendants have violated due process by depriving him of this right. Plaintiff invokes 37 Pa.Code § 95.737, an administrative regulation of general application to state and local correctional facilities in Pennsylvania. This provision deals with the religious accommodations available in Pennsylvania prisons. I deal with this objection in Section III.A., *infra,* and hold that Pennsylvania law does not give prisoners a liberty interest in the unrestricted wearing of religious ornamentation.

I construe plaintiff's second objection to allege that prison policy discriminates between religions, in that it allows Christian inmates to wear crucifixes throughout the prison but restricts where Muslim inmates can wear kufis. I deal with this claim in Section III.B., *infra,* and hold that plaintiff's claim must be rejected because he has not presented any evidence that suggests that the prison's policies reflect discriminatory intent.

### A. Plaintiff's Due Process Claim

37 Pennsylvania Code § 95.237, captioned "Religion" provides:

(a) *Minimum Requirements.* Religion shall be governed by the following minimum requirements:

(1) Each prisoner shall be allowed to satisfy the needs of his religious life consistent with orderly administration of the jail.

. . . . .

(5) Religious ornaments or medals pertinent to the beliefs of the prisoner shall be permitted in the jail and worn upon the person provided such ornaments or medals do not constitute contraband under the usual rules of the institution. . . .

To be of assistance to the plaintiff in this suit, paragraph (a)(5) must be understood as (1) including kufis in the category of "[r]eligious ornaments or medals" and (2) declaring a general right on the part of the inmate to wear a kufi "upon the person" in any part of the prison. Such a general right, unequivocally conferred, should—so the argument would go—be recognized as a state-created "liberty interest" of sufficient scope to be cognizable under the Fourteenth Amendment. *See Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 870–71, 74 L.Ed.2d 675 (1983) (finding that the mandatory language of Pennsylvania law created a protected liberty interest).

At the time that plaintiff filed this objection, the standard for determining whether a state had created a liberty interest protected by the Due Process Clause was that announced in *Hewitt.* Applying the *Hewitt* standard, I would conclude that Pennsylvania Administrative Code § 95.237(a)(5) does not give inmates a liberty interest in the unrestricted wearing of a kufi. Section 95.237(a)(1) appears to operate as a general framework for the seven particularized entitlements of § 95.237(a)(2) through (a)(8) that follow, announcing that "[e]ach prisoner shall be allowed to satisfy the needs of his religious life *consistent with orderly administration of the jail*" (emphasis added). The emphasized words seem intended to reserve to a warden and his staff authority to impose those reasonable limitations on section 95.237(a)(5) entitlements that are conducive to maintaining the efficient and secure operations of a correctional facility. And the security considerations on which Warden Frame

and his co-defendants rely to justify the prohibition on the wearing of headgear in Chester County Prison's common areas, *see* Section II.C., *supra*, would seem to come within the ambit of rules that the promulgators of section 95.237 would regard as reasonably calculated to promote "orderly administration of the jail."

The above analysis, however, no longer represents the proper standard. In *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court specifically rejected the test it had employed in *Hewitt* and upon which plaintiff relies. The Court announced:

[W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in *Wolff [v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ] and *Meachum [v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) ]. Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

—— U.S. at ——, 115 S.Ct. at 2300.

■ Under this new standard, plaintiff can establish that defendants have deprived him of a state-created liberty interest by showing that the defendants have restrained his freedom in such a way as to "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." I conclude that plaintiff cannot satisfy this test. The restrictions placed on where Mr. Muslim could wear a kufi were not "atypical" of prison life. The prison's headgear restrictions applied equally to all

inmates, and Mr. Muslim was treated no differently than others in the restrictions on where he could wear such headgear. Moreover, restrictions on where an inmate can wear headgear are not "atypical" of ordinary prison life because prison officials have broad authority to supervise many routine details of inmates' day-to-day lives, such as when inmates may shower, what food the prison cafeteria serves, and what uniform inmates must wear.

Because plaintiff has not come forward with any evidence to distinguish the headgear restrictions from other restrictions routinely imposed on inmates, he cannot establish that he has a state-created liberty interest protected by the Due Process Clause.

**B.  Plaintiff's Claim of Religious Discrimination**

■  Plaintiff's second objection alleges that the defendants discriminate against plaintiff, in that prison rules prohibit Muslim inmates from wearing kufis in the prison common areas, while Christian inmates can wear crucifixes throughout the prison. Defendants admit that prison rules operate as plaintiff describes. Defendants deny, however, that the rules result from any discriminatory animus. Because plaintiff has not produced any evidence suggesting that prison policies result from a discriminatory intent, plaintiff's discrimination claim must be dismissed. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

The fact that prisoners in common areas can wear crucifixes but not kufis results from two prison rules—a headgear rule and a medallions rule. The defendant's headgear restrictions apply equally to all prisoners, regardless of religion. Jewish inmates thus cannot wear yarmulkes outside their cells, Muslim inmates cannot wear kufis, and other inmates cannot wear the religious headgear reflecting their faiths. The medallions rule similarly does not distinguish between religions. It provides that "all prisoners are permitted to wear religious medallions of any kind. Religious medallions are limited in size to the size of a half-dollar or smaller, and limited in value to $50." Defendants' Motion for Summary Judgment, Exhibit C. Plaintiff does not dispute this characterization of the rule. Plaintiff has not come forward with any evidence suggesting that either of these rules was formulated with a discriminatory intent, or that the rules have been applied in a discriminatory manner.

The discrimination that plaintiff alleges—that Muslims cannot wear kufis where Christians wear crucifixes—results from two rules that do not distinguish between religions. Because the plaintiff has not alleged any discriminatory intent, nor come forward with evidence of such an intent, his claim of discrimination must fail.

**IV.  Conclusion**

Plaintiff's motion for summary judgment is denied. Defendants' summary judgment motion is granted with respect to plaintiff's claim for injunctive relief, plaintiff's due process claim, and plaintiff's claim that prison policies discriminate on along religious lines between Christian and Muslim inmates, to the detriment of the latter. Defendants have not shown, however, that there is no genuine issue of fact as to plaintiff's free exercise claim. Specifically, there remain for trial the questions of whether defendants' policies represent a "substantial burden" on plaintiff's free exercise of religion and whether defendants' policies represent the least restrictive means to further the government's interest in safe prisons.