Percy DEAN III and Charles Coleman

v.

Ray THOMAS, et al.

Civil Action No. 3:95–cv–46BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

July 1, 1996.

Percy Dean, III, Pro Se.

Charles Coleman, Pro Se.

James Homer Best, Hinds County Sheriff's Dept., Jackson, MS, for defendants.

## OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the Objection to Report and Recommendation of the Magistrate Judge filed by Defendants Diane Riley ("Riley"), Sherry Marsh ("Marsh") and Henry Williams ("Williams"). Having considered the Objection, the Court finds that it is not well taken and should be denied. The Court further finds that the Report and Recommendation of the United States Magistrate Judge should be adopted as the opinion of the Court. Because the Plaintiffs are the prevailing party in this matter, the Court further finds that costs should be assessed against Defendants Riley, Marsh and Williams.

Defendants have not objected to the merits of the Report and Recommendation. Having reviewed the opinion of the Magistrate Judge, the Court finds that it is well reasoned and a correct statement of the law. The Court therefore adopts the Report and Recommendation as the opinion of the Court.

Defendants object, however, to the amount of damages assessed against them. The Magistrate Judge found that both Plaintiffs were pretrial detainees and that both had been disciplined by being placed in "lockdown"[1] for over 30 days without the benefit of a prior hearing. The Magistrate Judge then concluded as a matter of law that Plaintiffs proved that, as pretrial detainees, their constitutional right to be free from punishment without due process of law had been violated. After a further finding that Defendants Riley, Marsh and Williams were the only Defendants liable to the Plaintiffs and that these Defendants were not entitled to qualified immunity, the Magistrate Judge recommended that damages be assessed against these three Defendants, jointly and severally, in the amount of $300.00 for each Plaintiff, or a total of $600.00.

In their objection, Defendants assert that Plaintiffs are entitled to no more than nominal damages because they failed to produce any evidence of actual injury. The Court finds no merit in this objection and concludes that being placed in lockdown for over 30 days is sufficient to justify the very low amount of damages recommended by the Magistrate Judge. Defendants also assert that after February 6, 1995, the Plaintiffs were state convicts and that the damage assessments should be reduced by one-half for each Plaintiff. Because the Magistrate Judge was aware of this fact when he recommended the assessment of damages, the Court again concludes that $300.00 per Plaintiff is an entirely reasonable amount of damages under the circumstances.

Defendants also assert that any Final Judgment in this case should require that Defendants pay the damages to the Court for distribution to the Plaintiffs only after the deduction of filing fees and other costs as set forth in the January 31, 1995, Order allowing the Plaintiffs to proceed *in forma pauperis* in this matter. That Order allows the Plaintiff to proceed *in forma pauperis* with the following proviso:

> Provided, however, that in the event any damages or other monies shall become payable to or for the benefit of plaintiff as the result of this litigation, whether by way of satisfaction of judgment, compromise settlement, or otherwise, plaintiff shall remain liable to the United States for the reimbursement of all court costs, fees and expenses which he shall have caused to be

---

1. "Lockdown" consisted of remaining in a one-person cell for approximately 23 hours per day. For one hour per day, each Plaintiff was allowed in a dayroom with access to a shower and a telephone.

incurred in the course of this litigation, and the same shall constitute a lien in favor of the United States against such damages and/or other monies unless and until the United States shall have been fully reimbursed for all such court costs, fees and expenses by payment thereof into court pursuant to 28 U.S.C. § 1915(d).

January 31, 1995, Order at 1.

While the Court is entitled to recover its costs incurred on behalf of the Plaintiffs, Defendants have failed to consider Rule 54(d) of the Federal Rules of Civil Procedure which provides in relevant part as follows:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs....

Fed.R.Civ.P. 54(d). The statute governing taxation of costs provides as follows:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case, and upon allowance, included in the judgment or decree.

28 U.S.C. § 1920. While the Plaintiff has not filed a bill of costs, the Court finds that such a filing is not necessary in this matter where the government, and not the Plaintiff, has incurred the costs of this litigation. The Court finds that it would be an unnecessary waste of judicial resources to require the Plaintiff to pay the costs of this litigation, then file a bill of costs for reimbursement by the Defendants. The Court will simply calculate the costs incurred and assess such costs against the Defendants. Because the Defendants filed a Waiver of Service of Summons on March 6, 1995, the Court did not incur any costs in serving process upon the Defendants. Therefore, the only costs which should be assessed against the Defendants in this matter is the filing fee of $120.00 which has not yet been paid because the Court allowed the Plaintiffs to proceed *in forma pauperis*.

Defendants also request that costs incurred by the Court in Civil Action No. 3:94–cv–555BN, in which Percy Dean was a plaintiff and which was dismissed as frivolous by the Court, should be withheld from the proceeds of Plaintiffs' damages in this action. The Court finds there is no basis in law or fact for requiring a plaintiff to pay costs in a case which was dismissed over a year ago. Defendants' request in this regard is therefore denied.

IT IS THEREFORE ORDERED that the Objection to Report and Recommendation of the United States Magistrate Judge is not well taken and should be denied.

IT IS FURTHER ORDERED that the Report and Recommendation of the United States Magistrate Judge is hereby adopted as the opinion of this Court.

IT IS FURTHER ORDERED that because Plaintiffs are the prevailing parties in this actions, all costs shall be assessed against Defendants Diane Riley, Sherry Marsh and Henry Williams.

SO ORDERED.

### REPORT AND RECOMMENDATION

NICOLS, United States Magistrate Judge.

This matter came on for an evidentiary hearing on the 21st day of September, 1995, at the James O. Eastland Federal Courthouse in Jackson, Mississippi. The plaintiffs sued pursuant to 42 U.S.C. § 1983, alleging that the defendants violated their constitutional rights by disciplining them without due

process while they were incarcerated at the Hinds County Correctional Facility. The defendants are Diane Riley; Sherry Marsh; Henry Williams; Ray Thomas; James F. White; and, Jolene Mapp. Riley, Marsh, and Williams were members of the Inmate Discipline Board which conducted the hearings regarding the plaintiffs' conduct. Thomas, White, and Mapp were officers at the facility. Plaintiff Dean has sued all of these persons, whereas plaintiff Coleman testified that he was only suing defendants Thomas, Riley, Marsh and Williams.

This cause was referred to the undersigned United States Magistrate Judge upon Order of Referral of Chief Judge William H. Barbour, for a report and recommendation pursuant to 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. Following the hearing the defendants filed a Motion for Summary Judgment setting forth the law which they contend supports their position in this cause. The plaintiffs have not responded to the motion, but the court has considered their sworn testimony at the omnibus hearing and at the evidentiary hearing in rebuttal to the motion.

### FINDINGS OF FACT

The new penal facility at Raymond, Mississippi was opened as the "Hinds County Detention Center at Raymond" on November 14, 1994. The plaintiff Coleman was transferred there on November 16, 1994, and the plaintiff Dean was transferred there on January 12, 1995. Both of the plaintiffs were incarcerated as pretrial detainees until they plead guilty to felonies on February 6, 1995. The plaintiffs charge that they were disciplined with "no formal procedures", denying them their due process rights.

The defendants concede that the plaintiffs were placed in lockdown and denied certain privileges for approximately 34–35 days due to disciplinary reasons, and that the plaintiffs were not allowed to attend the Inmate Discipline Board meeting wherein the charges were considered and the plaintiffs were found guilty. Dean, who is HIV positive, was disciplined because another inmate reported that Dean threatened to bite him and because of other alleged rules violations. Cole-

man was disciplined for various rules violations, including threatening to kill Deputy Egnor and using foul language to an officer, and incident reports were filed on January 18, 1995. Coleman remained in lockdown from January 18–February 23, 1995. Dean remained in lockdown from January 13–February 17, 1995.

Lockdown for the plaintiffs consisted of remaining in a one-man cell for approximately 23 hours per day. For one hour per day, the inmate was allowed in a dayroom wherein he had access to a shower and a telephone. No visitation was allowed during this lockdown period. The evidence was disputed as to whether the plaintiffs' commissary privileges were revoked during this period, although the discipline report states that the revocation of such privileges was part of the punishment. The plaintiff Dean charges that the only reason he was locked down was because he has the HIV virus; he charges that the defendants concocted a disciplinary violation in order to justify locking him down. The plaintiff Coleman concedes that he did curse; and thus acknowledged his guilt to one of the offenses charged, but asserts that he should not have been locked down without being able to be heard. The plaintiff Dean categorically denies that he committed the infractions he was found guilty of.

The defendants contended that the disciplinary process had not yet been formally established at the new facility at the time of the plaintiffs' lockdowns, in that the prison did not have the facility or staff set up in order that a prisoner could be present at the RVR hearing. According to the defendants, the prison did not have appropriate security to allow inmates to attend the hearings partly because the prison had experienced problems with the doors of the prison operating correctly. Prisoners were afforded the opportunity to attend their disciplinary hearings beginning on April 1, 1995. Between November, 1994, and April, 1995, no prisoner was allowed to attend his disciplinary hearing. According to the defendants, this was a transition period and it took time to get all procedures established and effectuated with the proper security. The individual defendants who were on the disciplinary board

testified that they did not know that an inmate had a constitutional right to attend a disciplinary hearing; they thought that the RVR process utilized was valid.

At the hearing, the defendants presented a "Defendant's Stipulation of Material Facts", which is attached to the motion as Exhibit "A", pages 1–6. A copy of the transcript of the entire evidentiary hearing conducted by the undersigned is attached to the motion as Exhibit "B". Having heard and considered the evidence and testimony presented, the court finds that the evidence supports the facts stipulated to by the defendants. Hence, the court adopts these asserted facts as its finding of facts.

The court also finds as a fact that the lockdowns imposed upon the plaintiffs were punitive in nature, although the conditions did not affect the plaintiffs' physical well-being. The punishment was imposed on these plaintiffs without granting them the right to be present at the disciplinary hearing or to appeal the final decision. The court finds that the punishment *did not* impose "atypical and significant hardship on the inmate[s] in relation to the ordinary incidents of prison life." *Sandin v. Conner,* — U.S. —, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). The court further finds that the proof establishes that the RVRs and subsequent punishments given to these plaintiffs were given in good faith and were not fabricated by the defendants. Finally, the court finds as a matter of fact that the jail was in a transition period during the plaintiffs' lockdowns and that new procedures were set up on April 1, 1995, by which inmates could appear and give testimony at disciplinary hearings.

### CONCLUSIONS OF LAW

#### A. DUE PROCESS VIOLATION

The analysis of a prisoner's due process rights has been altered since the United States Supreme Court rendered the decision of *Sandin v. Conner,* — U.S. —, —, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). In that case, a state inmate, Conner, was sentenced to 30 days disciplinary segregation following a hearing where Conner was present but not allowed to call witnesses. The Court considered his due process challenge to this punitive segregation and concluded:

> The time has come to return to the due process principles we believe were correctly established and applied in [*Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)] and [*Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)]. Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Id.,* at —, 115 S.Ct. at 2300.

The Court observed that "the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause." *Id.,* at —, 115 S.Ct. at 2300. Hence, the Court concluded that an inmate complaining of being subjected to administrative or disciplinary isolation must prove that the segregation imposed subjected him to an "atypical and significant hardship" before he is entitled to the protection of the Due Process Clause of the Fourteenth Amendment. The segregation must have worked an increase in the prisoner's sentence or have involved some other manner of significant restraint.[1]

*Sandin* involved convicted felons rather than pretrial detainees, but the defendants assert that its principles still apply as to detainees. The defendants cite *Green v. Ferrell,* 801 F.2d 765, 767 (5th Cir.1986), wherein the Fifth Circuit held that under the due process clause the rights of convicts and

---

1. The Supreme Court expressly characterizes the unusual deprivations in *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (transfer to a mental hospital) and *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (forcible administration of psychotropic drugs), as also involving a liberty interest.

pretrial detainees are the same as regards "tight-celling" [isolation]. This is because the reason for isolation in both disciplinary and administrative situations is the same: maintaining the internal security and order of the jail. *Id.* at 767, n. 2.

The undersigned rejects the defendants' argument that *Sandin* precludes liability in this case. Under *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), a pretrial detainee may *not* be punished without due process of law. A pretrial detainee's rights are not dependent upon state regulations; detainees simply may not be punished without being provided due process. In our opinion, *Sandin* does not alter this clearly established law.

The *Sandin* court distinguished *Bell* upon the prisoner Conner's argument "that any state action taken for a punitive reason encroaches on a liberty interest." *Sandin,* — U.S. at ——, 115 S.Ct. at 2300. The Court stated:

> *Bell* dealt with the interests of pretrial detainees and not convicted prisoners ... The Court in *Bell* correctly noted that a detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." The Court expressed concern that a State would attempt to punish a detainee for the crime for which he was indicted via preconviction holding conditions. Such a course would improperly extend the legitimate reasons for which such persons are detained—to ensure their presence at trial.

*Sandin,* at ——, 115 S.Ct. at 2300 (citations omitted).

▆ In the opinion of the undersigned, the above reasoning by the Court in *Sandin* indicates that *Bell v. Wolfish* still controls as

to the rights of pretrial detainees and that the principles set forth in *Sandin* are not applicable in regard to pretrial detainees. Although we have not located any Fifth Circuit cases so holding, the Ninth Circuit Court of Appeals has held accordingly in *Mitchell v. Dupnik,* 75 F.3d 517 (9th Cir.1996). In that case, an inmate sued various officers for allegedly violating his rights while he was a pretrial detainee in connection with a disciplinary hearing. In discussing *Sandin,* the court found as follows:

> *Sandin* thus recognizes that its rationale regarding incarcerated prisoners is not applicable to pretrial detainees. *Sandin* leaves *Bell v. Wolfish* untouched. *Bell* involved a challenge by pretrial detainees to general jail conditions, asserting that they amounted to the imposition of punishment prior to conviction. The Supreme Court concluded that the conditions did not amount to punishment, and therefore did not infringe the detainees' liberty interest under the Due Process Clause. But the court left no doubt that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell,* 441 U.S. at 535, 99 S.Ct. at 1872.

The Seventh Circuit has also noted that *Sandin* does not apply to pretrial detainees. *See Whitford v. Boglino,* 63 F.3d 527, 530, n. 4 (7th Cir.1995) ("In addition, *Sandin* does not apply to pretrial detainees, who may not be punished without due process of law regardless of state regulations").[2]

▆ The Fifth Circuit has interpreted *Sandin* on several occasions since it was rendered but has not addressed a situation regarding a pretrial detainee and disciplinary segregation.[3] In the opinion of the under-

---

**2.** Other courts have questioned whether or not *Sandin* applies to pretrial detainees. *See El-Shabazz v. Wangenstein,* 92 Civ. 7291, 1995 WL 489686 (S.D.N.Y. Aug. 15, 1995) ("But *Sandin* did not indicate whether its new state-created-liberty analysis applies to pretrial detainees as well as to convicted prisoners"); *Miller v. Pinson,* No. 94C 2157, 1995 WL 410958, n. 6 (N.D.Ill. July 11, 1995) (questioning whether *Sandin* applies to pretrial detainees); *Muslim v. Frame,* No. CIV.A. 93–554, 1995 WL 389724 at 8–9 (E.D.Pa. June 30, 1995) (applying *Sandin* to a pretrial detainee).

**3.** The Fifth Circuit cases have involved administrative segregation rather than disciplinary segregation or have involved convicts as opposed to pretrial detainees. In *Luken v. Scott,* 71 F.3d 192 (5th Cir.1995), an inmate was confined in administrative segregation due to allegedly false information that he was a gang member which was placed in his prison file. The court held that the loss of the opportunity to earn good-time credits are speculative, collateral consequences of prison administrative decisions and do not create constitutionally protected liberty interests;

signed, *Sandin* does not stand for the proposition that *pretrial detainees* may be punished without due process so long as the punishment does not impose atypical and significant hardship on the inmate in relation to the incidences of prison life. The language regarding pretrial detainees contained in *Sandin*, as well as the 9th Circuit and 7th Circuit cases cited above, convince us that *Bell v. Wolfish* is controlling.

 The court thus finds that these plaintiffs have proven that their constitutional rights to be free from punishment without due process of law have been violated. *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). They were admittedly punished as pretrial detainees without a hearing, without being allowed to call witnesses, and without a right to appeal the finding of guilt or the punishment. They were not allowed to testify on their own behalf and/or to deny or admit the charges. The plaintiffs' rights have been violated; the only issue is whether these defendants are immune from liability.

## B. QUALIFIED IMMUNITY

 The defendants have been sued in their individual capacities. They allege that they are immune under the concept of qualified immunity. However, this "qualified immunity" is defeated if the defendant official took the complained-of action "with the malicious intention to cause a deprivation of rights," or the official violated clearly established statutory or constitutional rights 'of which a reasonable person would have known' ". *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 818–819, 102 S.Ct. 2727, 2736, 2738–

2739, 73 L.Ed.2d 396 (1982); *Streetman v. Jordan,* 918 F.2d 555, 556 (5th Cir.1990). *See also Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978). As the defendants point out, this immunity protects all public officers from individual liability except those "who are plainly incompetent or who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 340, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Hodorowski v. Ray,* 844 F.2d 1210, 1216 (5th Cir.1988). If the defendant officers reasonably could have believed under the circumstances that their conduct was not a violation of the plaintiffs' constitutional rights, that defendant cannot be held liable. *Simpson v. Hines,* 903 F.2d 400, 402 (5th Cir.1990), citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

In the instant case, the undersigned accepts as fact the testimony of the members of the Discipline Board that they were not aware that prisoners had a *constitutional* right to be present at the disciplinary hearing. However, in the opinion of the undersigned, this is a *clearly established* constitutional right, and these defendants should reasonably have known that their actions violated these plaintiffs' rights.

 Officials are not ordinarily entitled to the protection of qualified immunity if clearly established constitutional rights have been violated. However, the doctrine may protect them where their actions can be justified as reasonable under "extraordinary circumstances" brought on by budgetary or other such constraints not of their making or beyond their control. *McCord v. Maggio,* 927

---

furthermore, administrative segregation *without more* creates no liberty interests. *Id.* at 193.

In *Pichardo v. Kinker,* 73 F.3d 612 (5th Cir. 1996), the court, citing *Sandin,* held that the administrative segregation of an inmate due to his gang affiliation did not deprive the inmate of a constitutionally recognizable liberty interest.

In *Eason v. Thaler,* 73 F.3d 1322 (5th Cir. 1996), a prisoner sued in part because he was not given notice or opportunity to be heard before being placed in lockdown. The court found that the lockdown was not punitive, but was instituted for the security and integrity of the

prison. Citing and discussing *Sandin,* the court dismissed this aspect of the inmate's case.

In *Orellana v. Kyle,* 65 F.3d 29, 31–32 (5th Cir.1995), the Fifth Circuit set forth its viewpoint as to what types of deprivations will have due process implications after *Sandin:*

Although *Sandin* cites with approval cases in which it was held that state law could create a constitutional liberty interest in good-time credits, or release on parole, it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional "liberty status".

F.2d 844, 848 (5th Cir.1991), *citing Young-berg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982). These defendants claim that the transition period required in moving to the new jail and the malfunctioning of the doors of the jail constituted extraordinary circumstances beyond their control which entitle them to immunity under *McCord.*

The defendants Captain Riley, Lieutenant Marsh, and Officer Williams all served on the disciplinary committee, or Inmate Discipline Board. These defendants had no personal involvement in issuing the original RVRs against the plaintiffs; their sole function was to meet and review the RVRs and to determine whether or not the RVRs and the punishment given was fair and reasonable. All of the defendants testified that they did not know the inmates had a constitutional right to be present at these meetings; that they thought the RVR procedure was adequate. The defendant Riley testified that the reason the prisoners were not allowed to come to the hearing was because the new jail's doors were inadequate to provide security.

The plaintiff Percy Dean was transferred to an isolation cell on January 13, 1995, at the request of Nurse Ruth Wyatt and on the authority of the defendant Lt. Ray Thomas, upon an accusation by inmate Robert Thomas that Dean had threatened to bite him.

While in isolation, the plaintiff Percy Dean was given an inmate disciplinary report on January 18, 1995, which charged him with "profanity towards a deputy, failure to comply with staff, loud noise from metal doors". The report was filed by the defendant deputy James F. White and signed by the defendant Lieutenant Jolene Mapp, as shift lieutenant. Deputy White charged that Dean kicked his cell door violently and cursed White. Dean was found guilty at the disciplinary hearing conducted January 20, 1995, outside his presence, and his sanction was "lockdown until 2–27–95 and loss of visitation and commissary". This report was signed by the defendants Marsh, Riley, and Williams.

█ The court finds that the defendants White and Mapp have no liability under the circumstances of Dean's case. They merely reported the disciplinary infraction in good faith. They were not actually involved in the punishment of Dean without due process. The lockdown was imposed by the members of the disciplinary board, albeit based upon the report of White and signed by Mapp as shift lieutenant. The members of the board actually punished Dean without due process being granted him.

█ For the same reasons, the court finds that the defendant Lieutenant Thomas has no liability. He was not responsible for the lockdown ultimately imposed as a result of the board's action; he merely recommended initial isolation as a result of the reported threat. This was not the ultimate "punishment" that was imposed without due process. Further, the plaintiff Dean has failed to prove that the RVR that followed the initial isolation was in any way fabricated simply to justify segregating him due to his HIV status.

█ The plaintiff Coleman asserts that he is only suing the disciplinary board members, Williams, Riley, and Marsh, and Lieutenant Ray Thomas. The only allegations that he makes against Lt. Thomas are that he wrote defendant Thomas about his lockdown and that Thomas did not respond [Tr. 37–39, Exh. B] and that it was Thomas' job to hear any appeals [Tr. 47–48, Exh. B]. We find that the plaintiff Coleman has failed to prove that the defendant Thomas played any part individually in the punishment given the plaintiff. Hence, no liability can be found as to the defendant Thomas.

█ The individual members of the Disciplinary Board, the defendants Lt. Marsh, Captain Riley, and Deputy Williams, are the persons who imposed the punishment against these defendants without due process of law. They are individually liable to these plaintiffs for this constitutional violation unless they are protected by qualified immunity.

The court has carefully considered this issue and finds that these three defendants, Marsh, Riley, and Williams, are not entitled to qualified immunity. Their conduct [imposing punishment on pretrial detainees without granting the prisoner any right to be heard] violated a·*clearly established constitutional*

*right*—a detainee's 14th Amendment right to *not* be punished without due process. The United States Supreme Court has clearly set forth this right in *Bell v. Wolfish* and numerous other cases. In the opinion of the undersigned, it is not reasonable that an officer on a disciplinary board of a jail did not understand his conduct to be in violation of that particular right. Hence, there was no "reasonable belief" on the part of these defendants that their conduct was constitutional; thus, they are not entitled to qualified immunity.

These defendants testified that they were not aware that their conduct violated the plaintiff's constitutional rights, and the court accepts their testimony as true and finds that they were acting in good faith. However, the good faith of an officer does not prevent liability or automatically entitle him to immunity from suit. When the constitutional right is clearly established, ill motive is not a requirement in order for a defendant to be found liable.

The undersigned has seriously considered whether or not the circumstances of this case justify or require the utilization of qualified immunity for these defendants on the basis of "extraordinary circumstances" as described in *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir.1991), *citing Youngberg v. Romeo*, 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982). In *McCord*, a Louisiana convict brought suit against the Warden of the Louisiana State Penitentiary, claiming that the conditions of the jail violated his Eighth Amendment rights. The lower court had found that the plaintiff lived in a roach-infested, windowless, unlighted cell into which rain water and backed-up sewage leaked. He slept on a mattress which was wet from the sewage flooding. The court found that the plaintiff's Eighth Amendment rights were violated, and that it was clearly established law that the conditions were forbidden under the Constitution. The court concluded that the defendant could not meet the threshold requirements for qualified immunity under *Harlow* but remanded the case for a determination of whether the defendant may be immune due to "extraordinary cir-

cumstances". The Court described this immunity as follows:

A public official may nevertheless be entitled to immunity if he can show that extraordinary circumstances prevented him from remedying the rights deprivation. *Harlow*, 457 U.S. at 819 [102 S.Ct. at 2738]; *Thomas v. Sams*, 734 F.2d 185, 190 (5th Cir.1984). Although this defense is normally applicable only where the official "can prove that he neither knew nor should have known of the relevant legal standard," *id.*, the Supreme Court has applied it where budgetary constraints precluded the administrator of a state mental hospital from satisfying "normal professional standards." *Youngberg v. Romeo*, 457 U.S. 3007 [307], 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28, 42 (1982). We emphasize that the "extraordinary circumstances" defense carries a highly difficult burden. *See e.g., Arebaugh v. Dalton*, 730 F.2d 970, 972–73 (4th Cir.1984) . . . .

*Id.* at 848.

In the case at hand, the defendants do not claim that budgetary problems or other outside problems prevented them from complying with the law. Although they testified that the jail's door problems caused security concerns, clearly security could have been readily accommodated by other measures during the relatively brief time necessary for a proper hearing satisfying constitutional due process concepts to be conducted. The defendants' primary reason for failing to comply with the law was the fact that they were not aware that their actions violated the law. They had not been trained in this regard and did not know that they were violating these plaintiffs' rights.

In our opinion, when the law is clearly established, a defendant cannot utilize his lack of knowledge to establish immunity to liability. Lack of knowledge of the law and good faith do not preclude liability. In the opinion of the undersigned, the circumstances in this case are not the type of extraordinary circumstances contemplated in *McCord* which would entitle the defendants to immunity.

## CONCLUSION

Consequently, the undersigned finds that the plaintiffs have met their burden of proof as to the defendants, Sherry Marsh, Diane Riley, and Henry Williams and that these defendants are not entitled to the defense of qualified immunity. The undersigned further recommends that a judgment be rendered in favor of the plaintiff Charles Coleman in the amount of $300.00 against the defendants [Marsh, Riley and Williams], jointly and severally, and that a judgment be rendered in favor of the plaintiff Percy Dean III in the amount of $300.00 against the defendants [Marsh, Riley and Williams], jointly and severally.

The undersigned finds that the plaintiffs have failed to prove that the defendants Ray Thomas, James F. White and Jolene Mapp have violated their constitutional rights and recommends that a judgment in favor of these defendants be entered and that this case dismissed with prejudice as to these defendants.

The parties are hereby notified that failure to file written objections to the findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from challenging such findings and recommendations on appeal. 28 U.S.C. § 636, *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982).

THIS the 27 day of March, 1996.