Michael G. GALLAHAN, Plaintiff,

v.

Cpl. B. B. HOLLYFIELD, et al., Defendants.

and

Michael G. GALLAHAN, Plaintiff,

v.

John S. GATHRIGHT, Warden, et al., Defendants.

Civ. A. Nos. 80–1163–AM, 81–0058–AM.

United States District Court,
E. D. Virginia,
Alexandria Division.

June 2, 1981.

On Motion for Reconsideration
June 30, 1981.

Michael G. Gallahan, pro se.

Eric K. G. Fiske, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

OREN R. LEWIS, Senior District Judge.

On February 6, 1981, this Court directed the above styled actions consolidated, as both represent identical issues raised by this *pro se* plaintiff.

This suit is brought under 42 U.S.C. § 1983. The plaintiff, a prisoner of the Commonwealth of Virginia, avers that his civil rights were violated when the defendants required him to cut his hair, notwithstanding his protests that long hair is a crucial part of his religious beliefs. He seeks injunctive and compensatory relief.

The Court directed counsel for the defendants, the Attorney General of Virginia, to take plaintiff's deposition and submit it to the Court.

Defendants have filed their responsive pleadings in this matter. The plaintiff was granted ample time to submit to the Court any contravening affidavits, documents, or exhibits in support of his case. No *ore tenus* evidence was deemed necessary in this case; therefore, the Court is prepared to hear and determine this case on the record as made by the parties.

On October 24, 1980, John Gathright, the Warden of the Staunton Correctional Center, posted a memorandum requiring all inmates to conform with the Division of Institutional Services Guideline 864 (# 864). That guideline sets forth standards relating to inmates' personal appearance, i. e., haircuts, mustaches, and sideburns. Affiant Gathright asserted that # 864 is nondiscriminatorily applied to all inmates; there are no exceptions.

On December 16, 1980, the plaintiff was processed through the Correctional Center. The plaintiff related that his religious beliefs required the wearing of long hair. The defendants, in accordance with # 864 proceeded to cut plaintiff's hair. The plaintiff's hair was also involuntarily cut on one other occasion; the subject of his first lawsuit.

Defendant Gathright correctly observed that there is no provision in # 864 to exempt American Indians from haircuts. The plaintiff states that he is an American Indian of Cherokee descent.

There is no material dispute as to the facts of this case. The issue for the Court to decide is: whether the plaintiff in fact had his First Amendment rights violated by application of the haircut regulation in force at the correctional facility.

■ In resolving this issue, the Court must make two specific inquiries. First, a determination must be made as to the sincerity of the belief of the plaintiff in his religious practices. Second, the Court must ascertain whether or not the institutional purpose behind the rule is legitimate and substantial, contrasted to plaintiff's First Amendment rights; and also further, determine whether or not the State's purpose could be achieved by reasonably narrower means. *See Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960); *Sostre v. Preiser,* 519 F.2d 763 (2d Cir. 1975).

The Court is aware of no published or unpublished authority which is mandatory upon this Court regarding the facts in this case.[1]

---

1. *But see: Lawhorn v. Cox,* No. 79–6172 (unpublished) (4 Cir.) decided 5/21/79, vacating and remanding a District Court decision dismissing a similar complaint for failure to state an actionable claim. On remand, that plaintiff failed to timely file an amended complaint and it was subsequently dismissed.

The plaintiff was not stripped of all his rights upon incarceration; specifically, he "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objection of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). This Court, and other superior courts, have consistently allowed prison and jail administrators great latitude in regulating correctional facilities. (Citations omitted.) However, the limitations upon religious freedom can be imposed only if the state regulation has demonstrated an important objection and the restraint of religious liberty is reasonably adapted to achieving that objective. *Accord Burgin v. Henderson*, et al., 536 F.2d 501 (2d Cir. 1976); *La Reau v. McDougall*, 473 F.2d 974 (2d Cir. 1972), *cert. denied*, 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973).

The Virginia Bill of Rights, in fact, provides, in part:

... [all] men are equally entitled to the free exercise of religion, according to the dictates of conscience. . . .[2]

The evidence reveals that plaintiff: is a Cherokee Indian, although not full-blooded; subscribes to the beliefs of a sect known as Sons of Jacob; has overtly practised his beliefs since at least his fifth year, including the wearing of long hair; and, while not incarcerated, preferred to associate with those other Cherokees who did not cut their hair.

The plaintiff, in his deposition, related that the tenets of his religion recognize the hair as a "sense organ," and that loss of hair equates to losing part of his body or being. He indicated that there were no written creeds established by his forefathers or family. Plaintiff asserted that he practiced the religion; however, such practice was restricted as a result of his confinement. While not incarcerated, he attended religious ceremonies which, he describes, are very private affairs.

The Court is of the opinion that plaintiff possesses a sincere belief in his religion and that such a belief existed prior to the haircutting incident; he has established that these are true beliefs and that he has not merely adopted these beliefs as a convenient method of maintaining a hairstyle which to him is preferential.

It is fairly settled that there is no requirement that a religion meet any organizational or doctrinal test in order to qualify for First Amendment protection.[3] Further, orthodoxy is not an issue in determining whether religion qualifies for First Amendment protection.[4]

Having established the above, the Court must look at the objectives of the State for promulgating and enforcing guideline # 864.

The defendants claimed that long hair provided a convenient place for hiding weapons—that it can obscure facial identification—and, if not kept clean, can cause sanitary problems. That is not enough to justify the enforcement of guideline # 864 against those Cherokee Indian prisoners, who have always worn long hair in accordance with their sincere religious beliefs, and IT IS SO ORDERED.

Therefore, the defendants, and their successors, are hereby enjoined from cutting and requiring the plaintiff to cut his hair.[5]

At all times here, the defendants acted in good faith in their relations with this plaintiff. Therefore, no damages will be awarded against any of the defendants.

The plaintiff has failed to prove those other allegations contained in his com-

---

**2.** Art. XVI, authored by Patrick Henry [June 12, 1776].

**3.** *See Sequoyah v. Tennessee Valley Authority*, 620 F.2d 1159, 1163 (6 Cir. 1980), where the Court observed that the fact that Cherokees have no written creeds or houses of worship is of little import when construing the individual beliefs of the plaintiffs' religion.

**4.** Id.; *also Fowler v. Rhode Island*, 345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828 (1953).

**5.** The plaintiff in his deposition stated his religious beliefs would permit him to wear his hair tied back in pony-tail style.

plaints regarding the defendants' placement of false charges and reports against him in retaliation for bringing these suits. Therefore, they must be DISMISSED, and

IT IS SO ORDERED.

Should the plaintiff be advised to appeal this Order, written notice thereof must be received by the Clerk of this Court within thirty (30) days from the date of this Order.

## ORDER

### On Motion For Reconsideration

The defendants in these consolidated cases move this Court to reconsider its Order of June 2, 1981 which enjoined them from cutting the plaintiff's hair.

The defendants proffer several considerations.

First, they note that the Court "placed great weight on the fact that the plaintiff possessed a sincere belief in his religion." The defendants are correct. If no sincere belief was evident from the evidence, the plaintiff's claim would have been found to be meritless.

The defendants, represented by the Attorney General, suggest that a plenary hearing was necessary to resolve the factual disputes in this matter. Contrary to their present position, the defendants earlier moved the Court for summary judgment based upon the evidence they had presented to the Court in this matter.[1]

The defendants note that would not be proper to determine factual disputes from affidavits. The Court did, however, require the Attorney General to take the deposition of the plaintiff. The defendants' claim that plaintiff's sincerity of his religious beliefs has not been sufficiently proven lacks merit. Gallahan gave sworn testimony. In fact, the defendants simply failed to offer any evidence refuting the claims re: his sincere religious beliefs.

Defendants state that if given a hearing they could produce evidence from plaintiff's institutional file which would indicate that

"his beliefs are not perhaps as sincere as he states." If such evidence was in plaintiff's file, the defendants had ample opportunity, if they were so advised, to attach such evidence to their answer as they were asked to do by this Court's Order of December 1, 1980 (C. A. 80–1163–AM).

Plaintiff's failure to provide information to several of the defendants' questions was of little import in this case. Those questions asked plaintiff to reveal the religious name of his God or Supreme Being and plaintiff's Indian name. Plaintiff gave a reason for not providing those answers. Eccentric or not, in the eyes of the Constitution all religious beliefs are given equal treatment; the only question is the sincerity of those beliefs—that has been established by the plaintiff and not contravened by the defendants.

If defendants had previously challenged Gallahan's beliefs, perhaps a factual dispute, re: his sincerity, could be now claimed.

The defendants lastly claim that the necessity of the disputed regulation and the necessity for enforcement of the regulation could only be fairly demonstrated at a plenary hearing.

Defendants could have easily offered empirical data to demonstrate the compelling interest the State may have had for enforcement of this regulation. They did not. Such information could have, at the least, been supplied by filing any investigative, accident, or medical reports re: problems associated with long hair on inmates. No such evidence was offered.

Further, the defendants offered no evidence that there were no less restrictive means of the objectives of the regulation.[2]

The Court does not believe that its June 2, 1981 Order will pose too great a burden on the defendants. It is doubtful that a multitude of converts will subscribe to the

---

1. *See* Defendants' Answer and Defense to Consolidated Complaint at 7.

2. *Cf. Teterud v. Burns*, 522 F.2d 357, 361 (8 Cir. 1975), providing alternatives.

beliefs of Gallahan's religion.[3]  *See*, e. g. *Wright v. Raines*, 457 F.Supp. 1082 (D.C. Kansas 1978).

For the reasons set forth herein, defendants' rather late motion for reconsideration must be DENIED, and this Court's Order of June 2, 1981 will stand.

IT IS SO ORDERED.

---

**3.**  Even defendants' affiant Landon, a prison official, noted that: "... most ... inmates have adopted the clean-shaven look, and their hairstyles are considerably shorter."