Justice Thomas,
dissenting.
Petitioner owns residential rental property in Anchorage, Alaska. He maintained a consistent policy of refusing to rent to any unmarried couple who intended to live together on his property, based on his sincere religious belief that such cohabitation is a sin and that he would be facilitating the sin by renting to cohabitants. At the instigation of several people to whom petitioner applied his policy, respondent ruled that petitioner had violated state and local ordinances that prohibit landlords from basing rental decisions on prospective tenants’ “marital status.” Petitioner appealed to the Alaska Superior Court, which upheld respondent’s ruling. The Alaska Supreme Court affirmed, concluding that the application of the ordinances to petitioner’s conduct did not violate his right to the free exercise of religion under either the United States Constitution or the Alaska Constitution. 874 P. 2d 274, 279-284 (1994) (per curiam).
*980 The Alaska Supreme Court also ruled that petitioner had no defense to the state and local ordinances under the Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42 U. S. C. §2000bb et seq. (1988 ed., Supp. V), enacted during the pendency of the proceedings below. RFRA provides that a governmental entity “shall not substantially burden a person’s exercise of religion even if the burden results from a rule of general applicability,” unless the entity “demonstrates that application of the burden to the person ... is in furtherance of a compelling governmental interest.” §§2000bb-l(a), (b)(1).[1] In a footnote, the opinion below dismissed petitioner’s invocation of this Act of Congress: “Assuming that the Act is constitutional and applies to this case, it does not affect the outcome, because we hold in the next section that compelling state interests support the prohibitions on marital status discrimination.” 874 P. 2d, at 280, n. 9. Petitioner seeks review of this latter ruling. I would grant cer-tiorari to resolve whether, under RFRA, an interest in preventing discrimination based on marital status is sufficiently “compelling” that respondent may substantially burden petitioner’s exercise of religion.
RFRA explicitly adopted “the compelling interest test as set forth in Sherbert v. Verner . . . and Wisconsin v. Yoder.” 42 U. S. C. § 2000bb(b)(l) (1988 ed., Supp. V). In Sherbert v. Verner, 374 U. S. 398 (1963), we stated: “It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, ‘only the gravest abuses [by religious adherents], endangering paramount interests, give occasion for permissible limitation [on the exercise of religion].’ ” Id., at 406 (quoting Thomas v. Collins, 323 U. S. 516, 530 (1945)). And in Wisconsin v. Yoder, 406 U. S. 205 (1972), we emphasized that the government’s asserted interest must be truly paramount: “The essence of all that has been said and written on the subject is that only those interests of the highest order . . . *981 can overbalance legitimate claims to the free exercise of religion.” Id., at 215 (emphasis added).
I am quite skeptical that Alaska’s asserted interest in preventing discrimination on the basis of marital status is “compelling” enough to satisfy these stringent standards. Our decision in Bob Jones Univ. v. United States, 461 U. S. 574 (1983), is instructive in the context of asserted governmental interests in preventing private “discrimination.” In that case, we held that “the Government has a fundamental, overriding interest in eradicating racial discrimination in education.” Id., at 604. We found such an interest fundamental and overriding — in a word, “compelling,” see ibid. — only because we had found that “[o]ver the past quarter of a century, every pronouncement of this Court and myriad Acts of Congress and Executive Orders attest a firm national policy to prohibit racial segregation and discrimination in public education.” Id., at 593 (discussing, inter alia, Brown v. Board of Education, 347 U. S. 483 (1954); Cooper v. Aaron, 358 U. S. 1 (1958); and Title VIII of the Civil Rights Act of 1968 (Fair Housing Act), 42 U. S. C. §3601 et seq. (1976 ed. and Supp. V)).
By contrast, there is surely no “firm national policy” against marital status discrimination in housing decisions. Chief Justice Moore, dissenting in the case below, correctly observed that “marital status classifications have never been accorded any heightened scrutiny under the Equal Protection Clause of either the federal or the Alaska Constitutions.” 874 P. 2d, at 289. Accord, Smith v. Shalala, 5 F. 3d 235, 239 (CA7 1993) (“Because [a] classification based on marital status does not involve a suspect class ... , we must examine it under the rational basis test”), cert. denied, 510 U. S. 930 (1994). Moreover, the federal Fair Housing Act does not prohibit people from making housing decisions based on marital status. See 42 U. S. C. § 3604 (outlawing housing discrimination on the basis of race, color, religion, sex, handicap, familial status, or national origin). Cf. § 3602(k) (defining “familial status” to mean the domicil of children with adults).
Nor does Alaska law, apart from the statutes at issue in this case, attest to any firm state policy against marital status discrimination. Indeed, as the dissent below pointed out:
“Alaska law explicitly sanctions such discrimination. See, e.g., AS 13.11.015 (intestate succession does not benefit unmarried partner of decedent); AS 23.30.215(a) (workers’ compensation death benefits only for surviving spouse, child, par *982 ent, grandchild, or sibling); Alaska R. Evid. 505 (no marital communication privilege between unmarried couples); Serradell v. Hartford Accident & Indemn. Co., 843 R 2d 639, 641 (Alaska 1992) (no insurance coverage for unmarried partner under family accident insurance policy).” 874 P. 2d, at 289.
The majority admitted that these were “areas in which the state itself discriminates based on marital status.” Id., at 283.
If, despite affirmative discrimination by Alaska on the basis of marital status and a complete absence of any national policy against such discrimination, the State’s asserted interest in this case is allowed to qualify as a “compelling” interest — that is, a “paramount” interest, an interest “of the highest order” — then I am at a loss to know what asserted governmental interests are not compelling. The decision of the Alaska Supreme Court drains the word compelling of any meaning and seriously undermines the protection for exercise of religion that Congress so emphatically mandated in RFRA.
Although RFRA itself is a relatively new statute, the state courts have already exhibited considerable confusion in applying the Sherbert-Yoder test to the specific issue presented by this case. Apart from this case, the highest courts of Massachusetts and Minnesota are each deeply split on the question whether preventing “marital status” discrimination is a “compelling” interest under our precedents, and the California Court of Appeal has twice applied the compelling interest test adopted by RFRA in reaching decisions that are directly contrary to the decision below. See Attorney General v. Desilets, 418 Mass. 316, 636 N. E. 2d 233 (1994); State ex rel. Cooper v. French, 460 N. W. 2d 2 (Minn. 1990); Smith v. Fair Employment and Housing Commission, 30 Cal. Rptr. 2d 395 (Cal. App.), review granted, 880 R 2d 111 (Cal. 1994); Donahue v. Fair Employment and Housing Commission, 2 Cal. Rptr. 2d 32 (Cal. App. 1991), review granted, 825 R 2d 766 (Cal. 1992), review dism’d, cause remanded, 859 R 2d 671 (Cal. 1993).[2] *983 By itself, this confusion on an important and recurring question of federal law provides sufficient reason to grant certiorari in this case.
I respectfully dissent.

 RFRA was Congress’ response to our decision in Employment Div., Dept. of Human Resources of Ore. v. Smith, 494 U. S. 872 (1990), which supplanted the compelling interest test in Free Exercise Clause jurisprudence with the inquiry into whether a governmental burden on religiously motivated action is both “neutral” and “generally applicable.” Thus, as a substitute for constitutional protection, RFRA grants a statutory “claim or defense to persons whose religious exercise is substantially burdened by government.” 42 U. S. C. § 2000bb(b)(2) (1988 ed., Supp. V).

There is no doubt that these decisions applied the Sherbert-Yoder test adopted by RFRA. See Desilets, 418 Mass., at 321-322, and n. 5, 636 N. E. 2d, at 236, and n. 5 (plurality opinion); id., at 334-335, 636 N. E. 2d, at 243 (Liacos, C. J., concurring); id., at 341, 636 N. E. 2d, at 246 (O’Connor, J., dissenting); French, 460 N. W. 2d, at 13-14 (Popovich, C. J., dissenting); Smith, 30 Cal. Rptr. 2d, at 403, 406, 409, 410; Donahue, 2 Cal. Rptr. 2d, at 41, 44.