47 F.3d 1167
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Deelicho BESH, David Poe, Terry D. Barber and Edward Jerome
Harbison, Plaintiffs-Appellants,
v.
Christine BRADLEY and Michael Dutton, Defendants-Appellees.
 No. 94-5124.
 United States Court of Appeals, Sixth Circuit.
 Feb. 17, 1995.
 
 On Appeal from the United States District Court for the Middle District of Tennessee; No. 90-01018, Thomas A. Higgins, J.
 M.D.Tenn.
 VACATED AND REMANDED.
 Before: NELSON and NORRIS, Circuit Judges, and BELL, District Judge.[1]
 PER CURIAM.
 
 
 1
 This is a civil rights case that is based on the Free Exercise Clause of the First Amendment. The plaintiffs are prison inmates on Tennessee's death row. The defendants are prison officials.
 
 
 2
 The complaint alleges that one of the plaintiffs, Deelicho Besh, is a Native American Indian. About seven years after he was sentenced to death, according to the complaint, Mr. Besh began (with help from a practitioner of the Native American religion and an agent of the "XAT AMERICAN INDIAN MEDICINE SOCIETY") to participate in Native American religious ceremonies. In 1986 he "took up Religious Duty as Keeper of Sacred Pipe." The remaining plaintiffs--who are not identified in the complaint as Indians--are said to have joined "Native American religious circle" at various times between January of 1988 and February of 1990.
 
 
 3
 The plaintiffs say that although they are constrained by their religion to engage in sweat lodge ceremonies, to wear Native American clothing, to smoke sacred herbs and possess prayer blankets in their cells, and to hold private religious services under the auspices of a religious leader more frequently than once a week, the defendants have not allowed them to do these things. In affidavits presented in support of a motion by the defendants for summary judgment (which motion was granted in part on July 16, 1992) and in evidence presented at a trial, held on October 5-6, 1993, of two issues as to which summary judgment was not granted, the defendants presented a variety of reasons, focused on security concerns, for not indulging the plaintiffs' wishes.
 
 
 4
 The district court entered final judgment in favor of the defendants on December 16, 1993. Relying in part on O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987)--a decision teaching that "prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights," id. at 349--the court found that the challenged prison policies were reasonably related to legitimate penalogical objectives.
 
 
 5
 The Religious Freedom Restoration Act of 1993, Pub.L. 103-141, became law on November 16, 1993. As codified at 42 U.S.C. Sec. 2000bb, the Act provides in Sec. 2000bb-1(a) that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." Subsection (b) provides as follows:
 
 
 6
 "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--
 
 
 7
 (1) is in furtherance of a compelling governmental interest; and
 
 
 8
 (2) is the least restrictive means of furthering that compelling governmental interest."
 
 
 9
 By its terms the Act applies "to all Federal and State law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." 42 U.S.C. Sec. 2000bb-3(a).
 
 
 10
 The Act does not create an exception as to people in prison. The pertinent report of the Senate Judiciary Committee, in a section captioned "APPLICATION OF THE ACT TO PRISONERS' FREE EXERCISE CLAIMS," says among other things:
 
 
 11
 "The Religious Freedom Restoration Act would establish one standard for testing claims of Government infringement on religious practices. This single test, however, should be interpreted with regard to the relevant circumstances in each case.
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 "As applied in the prison and jail context, the intent of the act is to restore the traditional protection afforded to prisoners to observe their religions which was weakened by the decision in O'Lone v. Estate of Shabazz." Sen.Rep. No. 103-111, July 27, 1993, at p. 9.
 
 
 15
 An amendment was offered on the floor of the Senate to make the Act inapplicable in the prison context (see Cong.Rec. for Oct. 26, 1993, S 14353), but the amendment was rejected by a vote of 58 to 41. Cong.Rec. for Oct. 27, 1993, S 14468. Senator Hatch spoke in opposition to the amendment, arguing that it was unnecessary. Pointing to the courts' "well-established history" of evaluating fairly, under the compelling state interest standard, the competing interests of prisoners and prison officials, Senator Hatch expressed himself as follows:
 
 
 16
 "Because of the special circumstances of incarceration, and the unique interest the Government has in maintaining order and control in the prison environment, the Government will necessarily be able to show its interest is compelling far more readily than in the civilian arena." Cong.Rec. for Oct. 26, 1993, S 14361-62.
 
 
 17
 Although it is clear that the "single test" prescribed by the Religious Freedom Restoration Act is to be interpreted with due regard to "the relevant circumstances in each case," as the Senate Report put it, it is equally clear that the district court did not undertake to decide, in the case at bar, whether the challenged policies substantially burdened the plaintiffs' exercise of religion and, if so, whether the policies passed muster under the statutory test. All but two of the plaintiffs' claims were decided 16 months before the Act was even passed, and the court did not refer to the legislation in disposing of the remaining two claims. We shall therefore vacate the orders appealed from and remand the case for disposition under the statute.
 
 
 18
 On remand, the district court should decide first whether any of the challenged policies places a substantial burden on the exercise of religion. If this question is answered in the affirmative as to any of the policies, the court should go on to decide (1) whether a compelling governmental interest is furthered by application of the policy in question, and (2) whether application of the policy is the least restrictive means of furthering that interest. We intimate no opinion, of course, as to how any of these questions ought to be decided.
 
 
 19
 The orders entered by the District Court on July 16, 1992, and December 16, 1993, are VACATED and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation