Johnson J. **LEWIS**, Plaintiff,

v.

Wayne **SCOTT**, et al., Defendants.

No. 6:94cv689.

United States District Court,
E.D. Texas,
Tyler Division.

Sept. 27, 1995.

---

Johnson J. Lewis, Tennessee Colony, TX, pro se.

Louis Victor Carrillo, Asst. Atty. Gen., Chris Lemens, Linda M. Kearney, Attorney General's Office, Austin, TX, for defendants.

## *MEMORANDUM OPINION*

JUSTICE, District Judge.

The above-entitled and numbered civil action was heretofore referred to the Honorable Harry W. McKee, United States Magistrate Judge. Plaintiff Johnson J. Lewis proceeding *pro se* and *in forma pauperis* brings this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000bb against Director Wayne Scott and Warden James Shaw, charging that Texas state prison regulations which require inmates be clean-shaven substantially burden his free exercise of religion. This case was referred to the Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

■ The Magistrate Judge conducted an evidentiary hearing consistent with *Flowers v. Phelps,* 956 F.2d 488 (5th Cir.), *modified in part on other grounds,* 964 F.2d 400 (5th Cir.1992). After this hearing, the Magistrate Judge issued a report and recommendation for the disposition of the case. The plaintiff has filed written objections; hence, with respect to the issues raised in those objections, the Magistrate Judge's report and recommendation is subject to *de novo* review. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988). After a careful review of the file and testimony in this action, as well as the authorities cited by the parties and the Magistrate Judge, the Magistrate Judge's report and recommendation will be rejected and modified in part and accepted in part. 28 U.S.C. § 636(b)(1). Specifically, findings of fact seven, eight, nine and ten will be rejected and modified, and conclusions of law one and three will be rejected and modified. The report and recommendation is further modified to the extent that it is inconsistent with this order.

## I. Background

Plaintiff Johnson J. Lewis is an orthodox Muslim inmate confined in the Texas prison system. He alleges that he wishes to grow a beard for religious reasons, but cannot because of prison grooming requirements which require prisoners to be clean-shaven.

The Religious Freedom Restoration Act of 1993 (RFRA) provides: "Government shall not substantially burden a person's exercise of religion even if the burden is from a rule of general applicability." 42 U.S.C. § 2000bb–1(a). The statute sets forth one exception to this general rule:

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) it is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb–1(b). The act was enacted in response to the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), and expressly disapproved of the Court's "virtual eliminat[ion] [of] the requirement that the government justify burdens on religious exercise imposed on laws neutral towards religion." 42 U.S.C. § 2000bb(a)(4). Accordingly, a purpose of the act is to "restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 [83 S.Ct. 1790, 10 L.Ed.2d 965] (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 [92 S.Ct. 1526, 32 L.Ed.2d 15] (1972)." 42 U.S.C. § 2000bb(b)(1).

After conducting an evidentiary hearing, the Magistrate Judge concluded that the prison regulation in question does not substantially burden the exercise of plaintiff's religion. The Magistrate Judge found that the plaintiff "sincerely believes he should wear a beard because of his religion", Report and Recommendation (Docket # 33) at 9, but determined that:

"[d]ue to the absence of a requirement in the Koran that beards are obligatory, the Court simply cannot conclude that the fail-

ure to grow a beard constitutes a violation of the Koran and thereby Islamic law. The Court accordingly cannot find that a prison regulation requiring a Muslim inmate to shave his beard places a substantial burden on the exercise of the plaintiff's religious beliefs."

Report and Recommendation (Docket # 33) at 18. This conclusion appears to be supported by a number of the Magistrate Judge's findings of fact:

7. The Koran does not require men to wear beards.

8. The Koran requires Muslims to follow secular authority unless secular rules violate the tenets of the Koran.

9. Chaplain Shabazz testified that Muslim inmates do not violate the Koran and do not commit a sin when they comply with the secular rule to be clean shaven.

10. The plaintiff is a follower of Jamil Elamin, who is unconcerned with whether Muslim men wear beards.

Report and Recommendation (Docket # 33) at 10.

██ Although the Magistrate Judge concluded that the requirement that inmates be clean-shaven is not a substantial burden on plaintiff's religious exercise, the Magistrate Judge also dutifully assumed *arguendo* that the plaintiff had satisfied his burden of proof, and went on to consider whether or not defendant had met its burden. The statute requires that, in order to be valid, regulations which substantially burden an individual's religious exercise further compelling government interests by the least restrictive means. The Magistrate Judge determined that the facial grooming regulation in issue is justified by compelling interests in security, safety, and hygiene. The Magistrate Judge further concluded that the defendants showed that the facial grooming policy was the least restrictive means of handling the prison's compelling governmental interest in security, but not the least restrictive means of handling the prison's compelling governmental interests in hygiene and safety. Report and recommendation (Docket # 33) at 20.

## II. Analysis

In his objections Lewis specifically challenges the Magistrate Judge's Conclusions of Law one and three. Plaintiff's Objection to the Report and Recommendation of the United States Magistrate Judge (Docket # 40) at 1. The Magistrate Judge concluded:

> 1. The plaintiff has not satisfied his burden of proof to show that the facial grooming policy places a substantial burden on his right to practice his religion.
>
> . . . .
>
> 3. The facial grooming policy is the least restrictive means of handling the prison systems' compelling governmental interest in security.

Report and Recommendation (Docket # 33) at 20.

Defendant argues that plaintiff's objections were not timely and the report is not entitled to *de novo* review because plaintiff's objections were filed on February 7, 1995, twenty days after Judge McKee's report and recommendation was filed. This argument has no merit. On February 2 the date for objections was reset to February 10, 1995. Accordingly, plaintiff's objections, deposited in his prison unit mailbox on February 7, were timely filed.

### A. Substantial Burden under the Religious Freedom Restoration Act

■ The Magistrate Judge's conclusion that the grooming policy does not constitute a substantial burden on plaintiff's free exercise of religion depends upon impermissible findings of fact which appraise plaintiff's substantive religious beliefs. The Supreme Court has held:

> Men may believe what they cannot prove. They may not be put to proof of their religious doctrines or beliefs. . . . The Fathers of the Constitution were not unaware of the varied and extreme views of religious sects, of the violence and disagreement of them, and of the lack of any one religious creed on which all men would agree. They fashioned a charter of government which envisaged the widest possible toleration of religious views. Man's relation to his god was made no concern of

the state. He was granted the right to worship as he pleased and to answer to no man for the verity of his religious views. . . . When the triers of fact undertake that task, they enter a forbidden terrain.

*United States v. Ballard,* 322 U.S. 78, 86–87, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1944); *see also Ferguson v. Commissioner of Internal Revenue,* 921 F.2d 588, 589 (5th Cir.1991) ("courts may not evaluate religious truths"); *Munn v. Algee,* 924 F.2d 568 (5th Cir.) *cert. denied,* 502 U.S. 900, 112 S.Ct. 277, 116 L.Ed.2d 229 (1991). The truth of a plaintiff's religion is an impermissible subject of inquiry for a finder of fact, and therefore may not be a basis for the conclusion that a regulation is or is not a substantial burden on plaintiff's exercise of religion.

■ First, it is noted that the Magistrate Judge properly concluded in his report and recommendation that the RFRA applies to prisons and prisoners. As the Magistrate Judge points out, this conclusion is dictated by the legislative history of the act; the section of the legislative history entitled "Application of the Act to Prisoners' Free Exercise Claims" begins:

> The Religious Freedom Restoration Act would establish one standard for testing claims of Government infringement on religious practices.

S.Rep. No. 111, 103d Cong., 1st Sess., *reprinted in* 1993 U.S.C.C.A.N.1892. A number of United States Courts of Appeals have reached the same result. *Bryant v. Gomez,* 46 F.3d 948 (9th Cir.1995) ("it is clear that the RFRA applies to prisoners' claims"); *Dickinson v. Austin,* 1995 WL 394360, 1995 U.S.App. LEXIS 16278 (9th Cir.); *Besh v. Dutton,* 1995 WL 68774, 1995 U.S.App. LEXIS 3584 (6th Cir.); *Werner v. McCotter,* 49 F.3d 1476 (10th Cir.) *cert. denied,* —— U.S. ——, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995); *Brown–El v. Harris,* 26 F.3d 68 (8th Cir. 1994).

■ The issue of how to apply the RFRA "substantial burden" test has not been addressed by the United States Court of Appeals for the Fifth Circuit, but the decisions of other circuits provide guidance. It is a self-evident truism that not all burdens

placed on an individual's free exercise of religion may be substantial:

> [T]he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests.

*Wisconsin v. Yoder,* 406 U.S. at 215–216, 92 S.Ct. at 1533. In weighing whether a particular regulation constitutes a substantial burden, other circuits have looked both to the degree of burden placed on an individual and the centrality of the particular practice burdened:

> To exceed the "substantial burden" threshold, government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs.

*Werner v. McCotter,* 49 F.3d 1476, 1480 (10th Cir.1995); *see also Bryant,* 46 F.3d at 949 ("the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine."). *But cf. Muslim v. Frame,* 891 F.Supp. 226 (E.D.Pa.1995) (rejecting centrality as an element of plaintiff's showing because "such a showing would unnecessarily place judges in a position of determining questions of religious doctrine").

It is also appropriate to look to pre-*Employment Division v. Smith* precedent to determine the content of the "substantial burden" requirement. This conclusion is compelled by the explicit purposes of the act and the decisions of other circuits. The statute specifically rejects the holding of *Employment Division* and reinstates prior case law. Debate in the Senate indicates that this reinstatement was meant to extend to the "substantial burden" element of the statute. *See Muslim v. Frame,* 897 F.Supp. 215, 219, 1995 U.S.Dist. Lexis 12866 at *13 (E.D.Pa. 1995) *citing* 139 Cong.Rec. S14352 (daily ed. Oct. 26, 1993). The Fourth Circuit has held that this reinstatement extends to the burden plaintiffs must show to be entitled to relief under the act, *Goodall v. Stafford County Sch. Bd.,* 60 F.3d 168 (4th Cir.1995), and the

Tenth Circuit relied on pre-*Employment Division* cases in order to weigh the possible substantial burden in *Werner.* 49 F.3d at 1479. The protection of religious expression has long proven to be a delicate task for the judiciary. *See, e.g., Wisconsin v. Yoder,* 406 U.S. at 215, 92 S.Ct. at 1533. It would be unwise to reject the guidance which decades of pre-RFRA case law provides, absent a clear directive from the Congress to do so.

A focus on degree of burden and centrality of burdened practice is consistent with the Supreme Court's leading pre-RFRA and *Employment Division* precedents. In *Sherbert v. Verner,* 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963), the Court found a burden on plaintiff's religious exercise where state unemployment regulations operated to deny her unemployment benefits because she refused to work on Saturday on religious grounds:

> [T]o condition the availability of benefits upon this appellant's willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties.

Similarly, in *Wisconsin v. Yoder,* the Court found that compulsory schooling of Amish youth "would gravely endanger if not destroy the free exercise of respondents' religious beliefs." 406 U.S. at 219, 92 S.Ct. at 1535. While emphasizing centrality these cases also recognized the broad reach of religious conviction and the wide range of practices which such convictions can require. *See, e.g., Sherbert v. Verner,* 374 U.S. at 398, 83 S.Ct. at 1790 (Douglas, J., concurring).

■ At the *Flowers* hearing, plaintiff testified that he believed that the Koran dictated that he follow the Sunnah, or practices of the prophets.[1] He also testified that these practices include wearing a beard, citing the Sunnah and the Koran to support his understanding of his religion's requirements. When asked by the court to explain the existence of many clean-shaven Muslims, plaintiff distinguished his beliefs from those of many United States sects, stating that he

---

1. The plaintiff filed a brief subsequent to his testimony entitled "Plaintiff's Answer and Objections to Defendant Scott and Collin's Motion for Summary Judgment" (Docket # 32). In the text

and exhibit of this brief plaintiff provides citations to and copies of the texts which provide the basis for his belief.

288

feels these sects violate the Koran and the Sunnah. Plaintiff further testified that, before his commitment to TDCJ, he had worn a beard for his entire life. The inability to wear a beard, he affirmed, makes him feel like a sinner because he is doing something which is against the will of Allah. He also stated that those who disobey the prophets and Allah will be in a dejected and debased position and will be tormented by fire.

Plaintiff and Chaplin Shabazz, an Islamic chaplin in the Texas prison system who testified on behalf of the defendants, had a spirited disagreement over the religious importance of wearing a beard. Chaplin Shabazz emphasized that wearing a beard is not a religious obligation, as it is not dictated by the Koran; but he acknowledged that beard wearing is dictated by the Sunnah, and is a deeply rooted practice for some Muslims. Chaplin Shabazz said that he had talked to many Imams who agreed with him that a beard was not obligatory, but noted that a more "extremist" Imam might disagree.

*Wisconsin v. Yoder* set forth two threshold showings—sincerity and religious basis of the burdened belief—which a plaintiff must make in order to state a *prima facie* free exercise claim. 406 U.S. at 215–19, 92 S.Ct. at 1533–35; *see also Werner*, 49 F.3d at 1479 n. 1 (reading *Yoder* threshold requirements into the RFRA). It appears from a preponderance of the evidence that plaintiff sincerely believes that his religion dictates that he wear a beard. This belief is based on his understanding of the Koran and Sunnah, and is "rooted" in various passages in these religious texts.[2] *Wisconsin v. Yoder*, 406 U.S. at 215, 92 S.Ct. at 1533. Plaintiff has made the showings required by *Yoder*. As a result, this practice will be entitled to statutory protection, if plaintiff can further demonstrate that the burden on his exercise is substantial.

In the present case the burden placed upon the plaintiff's religious practice is total. Plaintiff desires to grow a beard for religious

reasons but may not without incurring penalties under the prison's grooming regulations:

[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.

*Thomas v. Review Bd., Ind. Employment Sec. Div.*, 450 U.S. 707, 717–18, 101 S.Ct. 1425, 1431–32, 67 L.Ed.2d 624 (1981). With respect to plaintiff's desire to wear a beard, then, the prison grooming regulation is a burden of the highest degree.

The question of whether or not the burden is a substantial one, therefore, depends on the centrality or importance of the burdened practice. This question can only be answered by examining plaintiff's belief. In the present action, other Muslims' understanding of plaintiff's religious obligations are irrelevant, if plaintiff's conception is both different and sincerely held. *Moskowitz v. Wilkinson*, 432 F.Supp. 947, 949 (D.Conn. 1977) ("But the fact that some Jews do not object to shaving ... does not defeat the plaintiff's claim. It is his own religious belief that is asserted, not anyone else's."). A practice need not be absolutely mandated by one's religious leaders to be protected, when it is sincerely held by the relevant individual. *Id.* at 949; *Gallahan v. Hollyfield*, 516 F.Supp. 1004, 1006 (E.D.Va.1981) *aff'd* 670 F.2d 1345 (4th Cir.1982).

Centrality does not require that a burdened practice be one of the few most important practices of a religious adherent. An individual act which is not central to a scheme of religious practice can take on central importance, if other centrally important beliefs depend on successful performance of that act. In *Wisconsin v. Yoder* the burden of the required schooling lay not in a conflict

---

**2.** Plaintiff's belief that he should wear a beard depends upon his literal reading of these religious texts and mandates. In this he resembles the Old Order Amish plaintiffs in *Wisconsin v. Yoder*, who separate themselves from the outside world:

in response to their literal interpretation of the Biblical injunction from the Epistle of Paul to the Romans, "be not conformed to this world...."

406 U.S. at 216, 92 S.Ct. at 1533.

with a particular mandate that Amish children attend only Amish schools. Instead, the schooling,

> by substantially interfering with the religious development of the Amish child and his integration into the way of life of the Amish faith community, contraven[ed] the basic religious tenets and practice of the Amish faith.

*Wisconsin v. Yoder*, 406 U.S. at 218, 92 S.Ct. at 1534. The central importance of this particular duty is demonstrated by plaintiff's life-long practice of wearing a beard, and by his understanding of the religious penalties he risks by virtue of noncompliance.[3] Wearing a beard is, for the plaintiff, an important means of demonstrating obedience to his god. This obedience is of paramount importance within plaintiff's religious scheme, and its outward manifestations must also be protected if plaintiff's religious exercise is not to be substantially burdened. In sum, this absolute prohibition of an important religious practice is a substantial burden on plaintiff's exercise of his religion.

**B. Compelling Government Interest and Least Restrictive Means**

At the *Flowers* hearing plaintiff testified that he did not wish to cut his beard at all, Report and Recommendation (Docket # 33) at 8, but in his objections to the report and recommendation plaintiff states that he would "gladly comply" with a ¼ inch beard length restriction. At the *Flowers* hearing, Warden Garner testified that ¼ inch beards, because they are short, do not pose identification or search problems. Report and Recommendation (Docket # 33) at 8. Plaintiff currently has a medical "clipper shave pass"

which allows prisoners with certain skin conditions to maintain ¼ inch beards.[4] These passes are common within the Texas prison system.

The Magistrate Judge concluded that the state has compelling interests in security, safety, and hygiene, and that requiring prisoners to be clean-shaven is the least restrictive means of addressing the state's interest in security. Presumably this conclusion was addressed to plaintiff's desire to maintain a full beard of four to six inches. Plaintiff's objections, however, make clear that even a ¼ inch beard would be a welcome accommodation of his religious beliefs. In light of the warden's testimony that ¼ inch beards do not present security problems, a clean-shaven requirement is not the least restrictive means to satisfy the defendants' compelling interest in security. The Supreme Court has explained the state's burden in the following manner:

> It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, "[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation."

*Sherbert v. Verner*, 374 U.S. at 406, 83 S.Ct. at 1795 (citation omitted). The legislative history of the act indicates Congress's intent that courts, even under the exacting standard revived by the act,

> continue the tradition of giving due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and disci-

---

**3.** It is certainly true that plaintiff has failed to obey Islamic law in the past, as he admits in "Plaintiff's Response (Objections) to Defendant's Response to Plaintiff's Brief" (Docket # 14). Such failure may not be a basis for undermining his current, apparently sincere, efforts to comply with his interpretation of the tenets of his religion.

**4.** Defendant argues that because plaintiff is currently allowed to wear a ¼ inch beard for medical reasons his complaint is moot. This is not the case. A beard allowed for medical reasons may be prohibited if the medical reason disappears or a the prison decides on a new or alter-

native treatment or accommodation of the condition. Even if plaintiff's medical clipper pass could be considered a voluntary accommodation by defendants:

> It is well settled that defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.

*City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1075, 71 L.Ed.2d 152 (1982). The only relief which guarantees protection of plaintiff's religious exercise is that which recognizes his right to grow a ¼ inch beard for religious, not medical, reasons.

pline, consistent with consideration of costs and limited resources.

S.Rep. No. 111, 103d Cong., 1st Sess., *reprinted in* 1993 U.S.C.C.A.N. 1892. On this record, deference to prison administrators requires rejection of full length beards. Prison officials testified that full length beards would provide an additional place for prisoners to secrete contraband, and would require potentially longer and more dangerous searches of inmates. However, there is nothing in the record to suggest that ¼ inch beards pose security or identification problems. Instead, the record affirmatively indicates that ¼ inch beards are allowed for medical reasons and pose no significant problems to prison administrators. Prisoners' religious needs would appear no less compelling than their medical ones, and no less worthy of accommodation. The absolute prohibition on beards is not the least restrictive means of achieving the prison's compelling interest in security.

### III. Relief

■■■ Plaintiff Lewis, in his original complaint (Docket # 2) seeks damages and declaratory and injunctive relief. The RFRA provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb–1(c). The question of damages will not be considered for two reasons. First, defendants have raised, but not pursued, a qualified immunity defense. *See* Defendants Wayne Scott and James A. Shaw's Motion to Dismiss (Docket # 16). Defendants, as government officials, are entitled to qualified immunity from civil damages where "their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In order to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that he is violating that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The present case involves rights recently declared by statute, a statute which has not yet been interpreted

by the Fifth Circuit or the United States Supreme Court. *See, e.g., Swanner v. Anchorage Equal Rights Comm'n,* — U.S. ——, 115 S.Ct. 460, 130 L.Ed.2d 368 (1994) (dissenting from denial of certiorari). Pre–RFRA case law within this circuit established the former legality of the prison grooming regulations in question. *Powell v. Estelle,* 959 F.2d 22 (5th Cir.) *cert. denied,* 506 U.S. 1025, 113 S.Ct. 668, 121 L.Ed.2d 592 (1992). While defendants have violated plaintiff's rights, these rights were not clearly enough established at the time of their violation to defeat defendants' claim of qualified immunity from damages. Second, damages would be inappropriate on the merits, as it appears from the record that plaintiff has been allowed to wear a ¼ inch beard for medical reasons. Declaratory or injunctive relief may be appropriate, however, to guarantee plaintiff's continued religious freedom to grow a ¼ inch beard.

■■■ An injunction may not be entered, unless there is no adequate relief at law. *N.A.A.C.P. v. Thompson,* 357 F.2d 831, 838 (5th Cir.), *cert. denied,* 385 U.S. 820, 87 S.Ct. 45, 17 L.Ed.2d 58 (1966). Before a court employs its equitable powers to remedy a violation of federal law, it must also determine that the violation is ongoing in nature or is likely to recur. *See Green v. Mansour,* 474 U.S. 64, 71, 106 S.Ct. 423, 427, 88 L.Ed.2d 371 (1985); *Society of Separationists, Inc. v. Herman,* 959 F.2d 1283, 1285 (5th Cir.), *cert. denied,* 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 135 (1992). Equitable remedies must be precise, so as to meet the confines of Fed.R.Civ.P. 65(d), for such specificity is not merely "a hypertechnical requirement," it is "an important procedural safeguard." *Seattle–National Bank v. Manges,* 900 F.2d 795, 800 (5th Cir.1990).

■■■ Even if it is determined that injunctive relief is not justified, the propriety of declaratory relief must be separately considered. *See Steffel v. Thompson,* 415 U.S. 452, 468–69, 94 S.Ct. 1209, 1220–21, 39 L.Ed.2d 505 (1974). The Declaratory Judgment Act enables federal courts to "declare the rights and other legal relations of any interested party seeking such declaration."

28 U.S.C. § 2201(a). A declaratory judgement is a less intrusive form of relief than an injunction because, whereas an injunction commands or forbids parties to take certain actions, a declaratory judgment, true to its name, simply declares the rights or legal relations of the parties. *Morrow v. Harwell,* 768 F.2d 619, 627 (5th Cir.1985).

 Declaratory relief may be awarded when the facts do not support the entry of an injunction. *Morrow,* 768 F.2d at 627. For example, the Fifth Circuit has held that:

> Where constitutional violations are found, but state officials have shown their readiness to meet constitutional requirements, the court should limit its initial response to a grant of declaratory relief.

*Morrow,* 768 F.2d at 627; *see also Green v. Ferrell,* 801 F.2d 765, 773 (5th Cir.1986) (directing lower court to the analysis in *Morrow* when determining what relief to award). The decision to grant or deny declaratory relief is left to the trial court's sound discretion. *Pembroke v. Wood County, Tex.,* 981 F.2d 225, 228 (5th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 2965, 125 L.Ed.2d 665 (1993).

The first question which must be addressed is the adequacy of plaintiff's remedy at law. Here, where plaintiff has been denied damages, the relief at law is inadequate to deter future unlawful conduct by defendants. Injunctive relief is also inappropriate on these facts. There is nothing in the record to suggest that defendants "are demonstrably unlikely to implement the required changes without [an injunction's] spur." *Morrow,* 768 F.2d at 619. Declaratory relief is only appropriate where there is some danger that the complained of harm will be repeated. *Pembroke,* 981 F.2d at 228. Plaintiff is still in the custody of the Texas prison system and is still subject to its grooming regulations. Under these circumstances, a declaratory judgment is appropriate to ensure that his right to wear a ¼ inch beard for religious reasons is protected.

## IV. Conclusion

Plaintiff Johnson L. Lewis has demonstrated that the prison's requirement that he remain clean-shaven is a substantial burden on his religious practice. The defendants have not shown that the prison grooming requirement is the least restrictive means of furthering their compelling state interest in prison security. It is found that, in this case, the least restrictive means for the defendant to further its compelling interest in security is to allow plaintiff to maintain a ¼ inch beard for religious reasons.

Accordingly, for the reasons set forth above, plaintiff is entitled to a declaratory judgment that the defendants' enforcement of the TDCJID grooming policy, to the extent that it prevents plaintiff from growing a ¼ inch beard for religious reasons, violates plaintiff Johnson L. Lewis's statutory right to freely exercise his religion. An order conforming to this opinion will be issued concurrently herewith.