Triplett v. Commissioner, et al.       CV-95-588-B    02/27/96 P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


<u>Ervin Triplett</u>

    v.                                          Civil No. 95-588-B

<u>Commissioner, New Hampshire</u>
<u>Department of Corrections, et al.</u>


### <u>REPORT AND RECOMMENDATION</u>

Plaintiff's action is premised upon the claim that defendants, by enforcing the prison regulation requiring inmates to be "clean shaven", have prohibited him from having a full beard and thus have deprived him, as a Moslem, of his constitutional right to freedom of religion and have violated his rights under the Religious Freedom Restoration Act of 1993, (RFRA) Pub. L. No. 103-141, 42 U.S.C. § 2000bb <u>et</u> <u>seq</u>.  Before the court is the plaintiff's motion for a preliminary injunction (document no. 3).

<u>BACKGROUND</u>

Plaintiff, Ervin Triplett, has been a Moslem for eighteen years.  He is of the Islamic faith which is based upon the teachings of the prophet Mohammed.  He distinguishes his religious beliefs from those of the "Nation of Islam" which he states is a militant group.  Plaintiff follows the Sunnah or body

of traditional Moslem law observed by orthodox Moslems. The Koran (Qur'an) ". . . represents to Muslims, the word of God as revealed to and spoken through His Prophet, Mohammed . . . . [T]he Qur'an's roughly 6,000 verses comprise an entire code for moral, spiritual, and social life." David J. Karls, Islamic Law in Saudi Arabia: What Foreign Attorneys Should Know, 25 Geo. Wash. J. Int'l L. & Econ. 131, 137-8 (1992). The Koran is not the only source for Islamic religious doctrine.

> The Sunnah, which literally means "customary procedure or action" or "norm" is a set of rules deduced from the pronouncements and conduct of the Prophet . . . . The Sunnah includes stories or traditions of the Prophet, called hadith, as well as the Prophet's deeds and tacit approvals of another's action or practice.

Id. at 138-9. The Sunnah, or Hadith, is regarded as second in authority only to the Koran.

In July of 1995 plaintiff became an inmate at the New Hampshire State Prison. He arrived at the prison with a full beard approximately three inches in length. Consistent with prison regulation plaintiff was required to remove his beard and to remain clean shaven. Initially the plaintiff orally discussed his desire for a beard for religious reasons with both Warden Cunningham and Chaplain Smith. He filed a written request the same day he filed suit. (Exhibit C). The Warden asked plaintiff to provide either documentation, or the name of someone who could

2

provide authoritative information, as to the place of full beards in the Islamic religion. Plaintiff was unable to provide documentation but provided the name of a University of Maine professor. As of this date the professor has not been contacted and has provided no information.

Mr. Triplett testified that the religious basis for the requirement of full beard in the Islamic religion is not found in the words of the Koran but, he says, it is clearly set out in the Hadiths. Chaplain Smith testified that it is part of his responsibility to assemble information on the accepted practices and reading of religions of prisoners with which he is not personally familiar. This is done by contact with volunteer religious leaders of that faith and by reading. The list of key aspects are published in a prison document entitled "Religious Accommodations" (Exhibit A). The accommodations set forth for Moslems were provided to the Chaplain by a volunteer Imam in 1989. An Imam is a Moslem scholar, a prayer leader and authority on Islamic law. Neither the list (Exhibit A) nor the five basic tenets, or pillars, of Islamic faith make any reference to beards. Chaplain Smith also contacted a Moslem Chaplain in Connecticut who did not provide sufficient information to evaluate plaintiff's claim.

Warden Cunningham testified that he had never heard of a

3

requirement for a full beard as a part of the Islamic religion when plaintiff raised the issue. He attempted to investigate plaintiff's claim through the Islamic Education Center but received no response to his calls. He invited plaintiff to have the Maine professor contact him. A review of a one inch file of materials on the Islamic religion collected by Chaplain Smith was also undertaken by the Warden. The Warden has received no information from any source to corroborate plaintiff's claims.

The purpose of the "clean shaven" policy is to assure easy and prompt identification of inmates without facial hair. This is particularly true in the event of an escape when the first couple of hours are critical. One may alter or remove a beard in fifteen minutes but cannot grow a beard in a few hours. Other concerns include safety around machines and/or food and the ability to hide contraband in a full beard.

DISCUSSION

In his motion plaintiff requests:

> That a preliminary injunction order the defendants to permit the plaintiff to grow his beard as his religious faith requires. . . .

Motion for Preliminary Injunction at 9.

"The purpose of a preliminary injunction is to preserve the status quo . . . to prevent further injury . . . thus enhancing the court's ability, if it ultimately finds for the movant, to

4

minimize the harmful effects of the defendant's wrongful conduct." CMM Cable Rep. v. Ocean Coast Properties, Inc., 48 F.3d 620 (1st Cir. 1995).

> In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors (1) the likelihood of movant's success on the merits; (2) the potential for irreparable harm to the movant; (3) a balancing of the relevant equities, i.e. "the hardship to the non-movant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld," Narragansett Indian Tribe v. Guibert, 934 F.2d 4, 5 (1st Cir. 1991); and (4) the effect on the public interest of a grant or denial of the injunction.

Gately v. Commonwealth of Massachusetts, 2 F.3d 1221, 1224 (1st Cir. 1993). The "'sine qua non of (the preliminary injunction standard) is whether the plaintiffs are likely to succeed on the merits.'" Id. at 1225 (citations omitted).

1. Likelihood of Success on the Merits.

The state has reserved its right to challenge the constitutionality of RFRA but has not done so at this juncture.[1] In any event the state has acknowledged that ". . . it is appropriate to avoid addressing the constitutionality of a

---

[1] A challenge is unlikely to be productive in any event. Defendants cited Flores v. City of Boerne, 877 F. Supp. 355 (W.D. Tex. 1995) as holding RFRA unconstitutional. However, the Fifth Circuit has already reversed. Flores v. City of Boerne, 1996 WL 23205 (5th Cir. (Tex.)). All other courts which have considered RFRA's constitutionality have found it constitutional.

5

statute if possible (citations omitted)." <u>Sasnett v. Department of Corrections</u>, 891 F. Supp. 1305 (W.D. Wisc. 1995). Since defendant has not at this time raised the constitutionality of RFRA, the court will not address it.

RFRA provides in pertinent part:

> (a) In General - Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
> (b) Exception - Government may substantially burden a persons exercise of religion only if it demonstrates that application of the burden to the person -
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb

"As an initial matter, a plaintiff alleging a violation of RFRA must demonstrate that his right to the free exercise of religion has been substantially burdened." <u>Jolly v. Coughlin</u>, 1996 WL 49162, *7 (2nd Cir. (N.Y.)). In determining whether beliefs are entitled to free exercise protection

> . . . scrutiny extends only to whether a claimant sincerely holds a particular belief and whether the belief is religious in nature . . . . (citation omitted). An inquiry any more intrusive would be inconsistent with our nation's fundamental commitment to individual religious freedom; thus, courts are not permitted to ask whether a particular belief is appropriate or true.

6

<u>Id.</u>

Plaintiff testified that a beard is not specified in the Koran but is clearly required in the Hadith or traditions. He did not identify to the Warden prior to suit nor to the court at the hearing which Hadith specified beards as a religious requirement. Defendants' testimony was to the effect that they have been unable to verify that maintaining a full beard is a tenet of Islamic religion despite good faith efforts to do so.[2] At least one Islamic chaplain, however, has testified ". . . that wearing a beard is not a religious obligation, as it is not dictated by the Koran; but he acknowledged that beard wearing is dictated by the Sunnah, and is a deeply rooted practice for some Muslims." <u>Lewis v. Scott</u>, 1995 WL 769094 (D. Tex.).

RFRA "requires courts to apply the law as set forth in two earlier free exercise cases, <u>Sherbert v. Verner</u>, 374 U.S. 398 (1963) and <u>Wisconsin v. Yoder</u>, 406 U.S. 205 (1972). See 42 U.S.C. § 2000bb(b)(1)." <u>Jolly v. Coughlin</u>, <u>supra</u> at 49162. As a result, threshold scrutiny is limited to two showings - sincerity of the particular belief and a religious basis for the belief. <u>Yoder</u>, 406 U.S. at 215-19.

The defendants have not questioned the sincerity of

_____

[2] The efforts of the Warden and Chaplain are commendable and the court acknowledges that they reviewed the matter in good faith.

7

plaintiff's beliefs. They have questioned whether it is based on religious belief since they have found no substantiation for such a belief. Whether the prison policy is a substantial burden depends on the importance of the belief. Here the facts strongly support plaintiff's claim that he sincerely believes that beard wearing is a religious practice dictated by the Sunnah. Defendant has worn a beard for the eighteen years he has been a Moslem. He spent punishment time in maximum security rather than submit to the clean-shaven policy. He has pursued his beliefs with the Warden and Chaplain.

> Wearing a beard is, for the plaintiff, an important means of demonstrating obedience to his God. This obedience is of paramount importance within plaintiff's religious scheme, and its outward manifestations must also be protected if plaintiff's religious exercise is not to be substantially burdened. In sum, this absolute prohibition of an important religious practice is a substantial burden on plaintiff's exercise of his religion.

Lewis v. Scott, 1995 WL 769094, *6 (D. Tex.). The policy substantially burdens this plaintiff's exercise of religion.

Plaintiff having carried his initial burden, the burden shifts to the state to demonstrate that the policy furthers a compelling state interest in the least restrictive manner. 42 U.S.C. § 2000bb-1(b)(1) and (2).

> The legislative history of (RFRA) indicates Congress's intent that courts, even under the exacting standard revived by the act,

8

> continue the tradition of giving due
> deference to the experience and expertise of
> prison and jail administrators in
> establishing necessary regulations and
> procedures to maintain good order, security
> and discipline, consistent with consideration
> of costs and limited resources.

S. Rep. No. 111, 103d Cong., 1st Sess., reprinted in 1993
U.S.C.C.A.N. 1892.

Lewis, 1995 WL at 769097.

Here, defendants have advanced two state interests. A full beard, particularly in the event of an escape, makes quick identification more difficult. Secondly, such beards provide a place to hide contraband and make searches of inmates more dangerous.

The Lewis court determined that "deference to prison administrators requires rejection of full length beards." Id. In Luckette v. Lewis, 883 F. Supp. 471, 481 (D. Ariz. 1995), the court stated that "[o]ne might conclude that a six inch beard, or very long hair on one's head, may present a compelling health hazard or . . . be a security risk . . . ." Both courts found, however, that a trimmed 1/4 inch beard does not pose security or identification problems.

In this case the prison permits 1/4 inch beards on a "shaving pass" procedure when medically called for because of skin irritation. The plaintiff, like the prisoners in Luckette and Lewis, views even a 1/4 inch beard as an acceptable

9

accommodation of his religious beliefs since he has applied for such a pass without any medical proof of irritation.

Plaintiff did not claim that his religious beliefs required a beard of any particular length but only that a beard was required. If beards of 1/4 inch for medical reasons pose no security or identification problems, then religious needs, which are no less compelling, do not either. "The absolute prohibition on beards is not the least restrictive means of achieving the prison's compelling interest in security." Lewis v. Scott, 1995 WL at 769097.

Plaintiff has demonstrated a substantial likelihood of success on the merits.

2. Irreparable Injury.

"[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 96 S. Ct. 2673, 49 L.Ed.2d 547 (1976). Being unable to practice his religion by maintaining his beard as he believes his religious faith requires, plaintiff has demonstrated irreparable injury.

3. Balancing the harm.

The prison "clean-shaven" policy prevents plaintiff from practicing his religion as he believes is required. That is clearly a substantial harm. Defendants, on the other hand, will

10

not be harmed since the allowable beard is too short to hide contraband and a "clean-shaven" photo of plaintiff has already been taken thereby eliminating or substantially decreasing the escape identification risk. The balance of hardships is tipped dramatically in favor of plaintiff.

PUBLIC INTEREST

Protecting religious freedom is in the public interest. "Vindication of constitutional freedom and protection of First Amendment rights is in the public interest." Albright v. Board of Education of Granite School District, 765 F. Supp. 682, 686-7 (D. Utah 1991) (citations omitted). An injunction is in the public interest where the state policy is a substantial burden on religious practice and the state is unable to show a compelling interest exercised in the least restrictive way.

CONCLUSION

Based upon the facts shown at the hearing and the requirements of RFRA, plaintiff has established his right to a preliminary injunction. It is recommended that the motion (document no. 3) be granted and that defendants be enjoined from prohibiting plaintiff from maintaining a beard at a 1/4 inch length.

Any objection to this report and recommendation must be filed within ten days of receipt of this notice. Failure to file

11

objections within the specified time waives the right to appeal the district court's order.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge


Date:  February 27, 1996

cc:  Ervin Triplett, pro se
     Suzanne M. Gorman, Esq.

12